**Kevin NIX, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. 00–CV–2829 (ILG).**

United States District Court, E.D. New York.

July 21, 2000.

Kevin Nix, Minnersville, PA, pro se.

Kelly Moore, Assistant U.S. Attorney, Eastern District of New York, Brooklyn, NY, for U.S.

### MEMORANDUM AND ORDER

GLASSER, District Judge.

The plaintiff, Kevin Nix appearing *pro se*, makes this petition pursuant to Title 28, United States Code, Section 2255. Nix contends that his sentence should be vacated, set aside or corrected for the following reasons: (1) the Court allegedly failed to comply with Rule 11(c)(1) to ensure Nix's

guilty plea was an intelligent and voluntary choice, and (2) Nix was denied effective assistance of counsel because his lawyer did not file a notice of appeal. For the reasons set forth below, these claims are rejected and the petition is denied.

## BACKGROUND

On January 28, 1999, after a jury had been selected and the trial of Nix and eight others was about to begin, an oral global plea agreement was reached between the defendants and the government with the parties agreeing to specific terms of imprisonment ranging from 10 years to 30 years pursuant to Rule 11(e)(1)(C). Nix pleaded guilty to Count 17 of the indictment charging him with narcotics conspiracy in violation of 21 U.S.C. § 846. Nix and the government agreed to a specific prison term of 10 years.

During the plea allocution, the Court read Nix (and three of his co-defendants who were pleading guilty to the same count) Count 17 in its entirety (Tr. at 8).[1] Nix was advised of the minimum and maximum statutory sentences of ten years to life (Tr. at 13); he was advised that the Court could add a period of supervised release of 5 years to his sentence (Tr. at 14); and he stated that he understood what supervised release means (Tr. at 14). In addition to reading Nix Count 17 from the indictment (Tr. at 8), the Court explained that charge and its elements (Tr. at 20). Nix allocuted that he was a knowing and voluntary party to the narcotics conspiracy and that he had an understanding with others to distribute and possess with intent to distribute cocaine and cocaine base. (Tr. at 22).

Nix's Presentence Report specifies that a term of supervised release of at least 5 years was mandatory, unless Nix was eligible for the "safety valve" provision (18 U.S.C. § 3553(f)). (PSR ¶¶ 79, 80). At the sentencing proceeding, Nix's attorney confirmed that he had reviewed the PSR with Nix, but raised no objection to the paragraphs relating to supervised release (S. at 2). On June 9, 1999, the Court accepted the 11(e)(1)(C) plea and sentenced Nix to a prison term of 120 months; five years supervised release; and a $100 special assessment (S. at 8). At the sentencing, neither Nix nor his attorney objected when a 5–year term of supervised release was imposed. At the end of the hearing, Nix's attorney stated on the record "I am discussing my client's appellate rights with him and [will] file a notice of appeal if he so directs." (S. at 10).

## DISCUSSION

I. *Nix's Guilty Plea Was Voluntary And Intelligent*

Nix contends that his guilty plea was not knowing and intelligent because he was not advised that he faced a mandatory term of supervised release of 5 years in addition to the term of imprisonment and that upon a violation of the terms of supervised release he could be returned to prison for the full 5 years.

Rule 11 of the Federal Rules of Criminal Procedure provides in part as follows:

(c) Advice to Defendant. Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:

(1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special or supervised release term . . .

Fed. R.Crim. P 11(c)(1).

The Court clearly explained to Nix and his co-defendants that "in addition to any term of imprisonment, the Court could add

---

1. The Transcript of the Plea Allocution is referred to as "Tr." and the Transcript of the Sentencing Proceeding is referred to as "S."

The Petitioner's Memorandum in Support of the Petition is referred to as "Br."

a period of supervised release up to five years." (Tr. 14). When asked if he knew what supervised release means, Nix said "Yes." (Tr. at 14). Thus, Nix was fully advised of the 5–year term of supervised release prior to pleading guilty. Consequently, his guilty plea was knowing and intelligent.

In support of his proposition that the five-year period of supervised release violated his plea agreement, Nix principally relies upon a decision of *Paradiso v. United States,* 689 F.2d 28 (2d Cir.1982), *cert. denied,* 459 U.S. 1116, 103 S.Ct. 752, 74 L.Ed.2d 970 (1983). In *Paradiso,* the Second Circuit stated clearly that in an action alleging violation of a plea agreement, "[t]he dispositive question ... is what the parties to this plea [bargain] reasonably understood to be the terms of the agreement." *Id.* at 31 (quoting *United States v. Arnett,* 628 F.2d 1162, 1164 (9th Cir.1979)). The crucial issue in the present case, as in *Paradiso,* is whether the imposed sentence "comport[s] with the reasonable understanding and expectations of the defendant as to the sentence for which he had bargained." *Id.* That question is one of fact which must be answered by objective proof on the record. *Gammarano v. United States,* 732 F.2d 273, 275–76 (2d Cir.1984). In *Gammarano,* the Second Circuit was faced with a case very similar to the present one. The defendant claimed that the imposition of a five-year probation term violated his plea agreement that his sentence would not exceed two years. In denying the defendant's § 2255 motion the court explained the *Paradiso* case as follows:

> In *United States v. Paradiso,* the plea agreement "ambiguously stated" the question of whether appellant's sentences would run concurrently. Looking to "the real intent of the parties," the court upheld the imposition of consecutive sentences ...

*Id.* at 276.

In the present case, the record as a whole overwhelmingly indicates that Nix's term of supervised release satisfied his expectations under the plea agreement. Nix's attorney, Charles Hochbaum wrote in his declaration in connection with this motion:

> On January 28, 1999, Nix and his eight co-defendants decided to enter into a global plea agreement with the government. Prior to entering into the agreement, I discussed the terms of the proposed plea agreement with Nix. We discussed the proposed agreed-upon sentence which included a 10–year term of imprisonment and a 5–year term of supervised release. I explained to Nix that, under the terms of the plea agreement, he would be facing a term of 5 years supervised release in addition to the 10–year term of imprisonment.

Hochbaum Dec.

At the plea, Nix was told that a term of supervised release up to five years could be added to his term of imprisonment and he indicated that he knew what supervised release meant. Nix cannot claim that the imposition of a term of supervised release violated his reasonable expectations.

## II. *Nix's Trial Counsel Did Not Provide Ineffective Assistance*

■ To prevail on a claim that his lawyer was ineffective because he failed to bring an appeal, petitioner must show both that his lawyer's performance " 'fell below an objective standard of reasonableness' " and that the lawyer's deficient performance prejudiced him. *Roe v. Flores–Ortega,* 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000) (quoting *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Nix cannot show that his lawyer's performance was deficient in any way, and thus his claim must be denied.

For purposes of evaluating a lawyer's performance in this context, the Supreme Court has divided claims into two categories: cases in which the lawyer never con-

sulted with petitioner about appeal, and cases in which the lawyer did consult with petitioner about appeal. *Id.* at 1035. In cases where the lawyer consulted with petitioner about an appeal, a lawyer "performs in a professionally unreasonable manner *only by failing to follow defendant's express instructions with respect to an appeal.*" *Id.* (emphasis added).

Nix has conceded that Hochbaum consulted with him about an appeal (*See* Nix Affidavit, Exhibit A to Petition). Accordingly, under *Flores Ortega,* Nix's claim of ineffective assistance has merit only if he can demonstrate that Hochbaum ignored an express instruction from Nix to file an appeal, which is exactly what Nix alleges.

Nix contends that his trial counsel was ineffective because he failed to file a notice of appeal after Nix requested him to do so. (Br. at 9–12). Petitioner supports this claim with a sworn statement attached to his petition in which he claims "I told him just file the appeal for me and thats [sic] it." Nix's mother also provided an affidavit in which she asserts "I was informed by [Mr. Hochbaum] that not much could be done about the case at that point, but that, my son Kevin, want to appeal his case." She also asserts that Mr. Hochbaum "stated that he would file some kind of Notice-of-Appeal in Kevin's case . . ." Mr. Hochbaum, has submitted a declaration in which he states that Nix never instructed him to file a notice of appeal:

> On June 9, 1999 Nix was sentenced in accordance with the terms of the plea agreement. At the conclusion of the sentencing proceeding, I stated on the record that, having discussed my client's appellate rights with him, I would file a notice of appeal if he directed me to do so. Following the sentencing, I spoke with Nix and advised him that I did not believe there were any viable appellate claims since he had received the specific sentence provided for by the plea agreement. Nevertheless, I instructed Nix to

> call me or write me if he wished me to file a notice of appeal. He never did.

Hochbaum Dec.

To be sure, this issue could be addressed by live testimony at a hearing. But in *Sparman v. Edwards,* 154 F.3d 51 (2d Cir.1998) the Second Circuit indicated that where allegations of ineffectiveness have been raised as the basis of a habeas corpus petition, the "assertedly ineffective attorney [may be afforded] an opportunity to be heard and to present evidence, in the form of live testimony, *affidavits, or briefs.*" *Id.* (emphasis supplied). This suggests that live testimony is not invariably necessary where the record in the form of "affidavits or briefs" clearly and convincingly supports an inference that may be drawn without the assistance of such testimony.

It may be assumed that in encouraging district courts to extend to "assertedly ineffective" attorneys the opportunity to respond by way of "affidavits or briefs," the *Sparman* Court was mindful that a "barebones assertion by a defendant, albeit made under oath, is insufficient to require a hearing or other action on his claim" in the absence of "greater particularity," or "some substantiation . . . to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim." *Underwood v. Clark,* 939 F.2d 473, 476 (7th Cir.1991) (Posner, J.); *see United States v. Castillo,* 14 F.3d 802, 805 (2d Cir.1994) (citing with approval the holding of *Underwood* that "in a subsequent collateral attack on the conviction the defendant must produce something more than a bare, unsubstantiated, thoroughly self-serving, and none too plausible statement that his lawyer (in violation of professional standards) forbade him to take the stand"). If this were not so, then *Sparman* would surely have provided that an opportunity be afforded the assertedly ineffective counsel "to be heard and to present evidence, in the form of live testimony" only, to the exclusion of "affidavits or briefs." This would then have required a hearing in

every case in which the attorney accepted the invitation to respond, simply upon a convicted defendant's assertion that his attorney was ineffective. Given the ease with which such assertions can be made, the result would be a questionable investment of judicial resources.

Here, the Court is faced with Nix's claim of ineffective assistance for failure to file an appeal supported by an affidavit of his mother in which she does not even contend that counsel was expressly asked to file a notice of appeal. Nix's thoroughly self-serving assertion is contradicted by a declaration made under penalty of perjury by an officer of the Court that no such request was made. Nix's claim that Hochbaum ignored an express request to file a notice of appeal is questionable, especially considering that Hochbaum clearly indicated to the Court at the sentencing hearing that he would file a notice of appeal if instructed to do so. In the absence of any other evidence to suggest that petitioner might actually have suffered a deprivation of his constitutional right to effective representation by trial counsel, Nix's assertion is simply not sufficient to justify the investment of judicial resources that a hearing would require. *See Siciliano v. Vose*, 834 F.2d 29, 31 (1st Cir.1987) (Breyer, J.) (approving a district court's decision not to hold an evidentiary hearing on § 2254 petition sustained only by an affidavit that alleged no "specific and detailed facts" in support of allegations of constitutional violations).

Because the record will not support Nix's claim that he received ineffective assistance of counsel on the basis of counsel's failure to file a notice of appeal, that claim is dismissed.

## CONCLUSION

For all the foregoing reasons, Nix's petition is denied.

SO ORDERED.