Genaro **ROSA**, Petitioner,

v.

**UNITED STATES**, Respondent.

No. 99 Civ. 3499(JSR).
No. 97 CR. 829(JSR).

United States District Court,
S.D. New York.

Oct. 18, 2001.

Genaro Rosa, New York City, pro se.

David C. Finn, United States Attorney's Office, Mary Jo White, New York City, for U.S.

### ORDER

RAKOFF, District Judge.

On September 24, 2001, the Honorable Gabriel W. Gorenstein, United States Magistrate Judge, issued a thorough Report and Recommendation in the above-captioned matter recommending that the *pro se* petitioner's motion under 28 U.S.C. § 2255 to vacate his judgment of conviction be denied and the petition dismissed.

Petitioner has failed to file any objection to the Report and Recommendation, and, for that reason alone, has waived any right to further appellate review, *see Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir.1997); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir.1992). Accordingly, the Court hereby adopts the Report and Recommendation, and, for the reasons stated therein, dismisses the petition. Clerk to enter judgment.

SO ORDERED.

### REPORT AND RECOMMENDATION

GORENSTEIN, United States Magistrate Judge.

Petitioner Genaro Rosa, proceeding *pro se,* has moved under 28 U.S.C. § 2255 to vacate his judgment of conviction.[1] For the reasons stated below, it is recommended that Rosa's motion be denied.

*Proceedings before the Trial Court*

On May 6, 1997, Genaro Rosa, along with three other individuals, was arrested for possession of heroin. On August 21, 1997, a grand jury indicted him on charges of (1) conspiracy to distribute, or possess with intent to distribute, one kilogram or more of mixtures and substances containing heroin and (2) possessing with intent to distribute approximately 368 grams of mixtures or substances containing heroin, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(B) and 18 U.S.C. § 2. *See* Indictment, filed August 22, 1997, in 97 Cr. 829. Rosa and the other defendants waived their right to a jury trial. (Tr. 5–10).[2] On January 5, 1998, the trial began before Judge Rakoff and continued on January 6, 7 and 8.

On the morning of January 9, 1998, counsel for one of Rosa's co-defendants stated that the defendants were willing to enter pleas of guilty pursuant to a "global plea offer" from the United States Attorney's Office. (Tr. 700). Following a recess in the trial to prepare written plea agreements, the parties returned to the courtroom. (Tr. 702). While at first not all four defendants were apparently ready to state their willingness to plead guilty (Tr. 702–703), ultimately all four did so. (Tr. 707–745, 746–57, 757–68, 768–81). In accordance with his plea agreement, Rosa pled guilty only to the second count of the two-count indictment: possession with intent to distribute approximately 368 grams

---

1. While technically a "movant," Rosa is referred to as the "petitioner" because he is so designated in the caption of his court papers.

2. "Tr." refers to the trial transcript of *United States v. Rosa*, 97 Cr. 829. "S." refers to the transcript of the April 16, 1998, sentencing proceeding.

of heroin. (Tr. 757–68). The parties stipulated Rosa's sentencing guidelines range to be 63 to 78 months. *See* Letter from Assistant United States Attorney Jennifer M. Moore to Jose Muniz, Esq., dated January 9, 1998 (reproduced as Exhibit C to Affidavit of Jennifer M. Moore, dated February 18, 2000) (hereinafter "Plea Agreement"). Sentencing was set for April 16, 1998.

During the sentencing proceeding, Rosa's counsel initially stated that Rosa "wants to withdraw his plea over my recommendation that he not do so." (S.20). The Court reminded Rosa of the Plea Agreement and the sentence he was facing. Rosa responded: "That I wasn't really too sure, your Honor." (S.20). When told by the Court that the probation office was recommending the lowest number in the stipulated sentencing range, Rosa asserted that he had "three kids to take care of and, right now, my mom's, she is really sick." (*Id.*) The Court denied the motion to withdraw the plea and sentenced Rosa to a term of imprisonment of 63 months, to be followed by five years of supervised release, and a mandatory special assessment of $100. (S.20, 26–27). Rosa did not appeal.

*Rosa's Motion to Vacate His Sentence under 28 U.S.C. § 2255*

Rosa's present motion is dated April 14, 1999, and was received by the Court on April 19, 1999. *See* Genaro Rosa's (Prisoner No. 42012–054) Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (hereinafter, "Motion to Vacate" or "Motion"). Rosa raises multiple grounds in support of the relief he seeks, almost all of which are set forth without any elaboration. *See* Motion to Vacate at 5–6, and unnumbered page. His claims, reproduced verbatim, are as follows:

A. Ineffective Assistance of Counsel—Sixth Amendment Violation. Counsel failed to adequately investigate and prepare for the case; counsel also failed to properly communicate the risks of going to trial, depriving him to make a plea knowingly and willingly. He was held in a county which was in very bad condition for (5) months before being indicted and never waive or gave my attorney permission to do so.

B. Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or of with understanding of the nature of the charge and consequences of the plea. Lying to the defendant as to sentence to be imposed, rushing into plea without investigation, plea not knowingly and intelligently made (see attached from psychologist the IQ is extremely low). His attorney was well aware that Mr. Rosa didn't comprehend very well but force him to sign a plea agreement he never seen or went over before. Plea urged for the sake of a contingent plea agreement for codefendant, failure to request time in which to review Jencks material.

C. The sentence was imposed in violation of the Due Process Clause of the Fifth and Sixth Amendment. Counsel failed to raise timely, formal, written objections to the PSI erroneous computation of the amount drugs attributed to the defendant, Mr. Rosa stated he never seen any drug. Failure to object to ex parte information provided to the court before sentencing. Counsel failed to sit in on the interview with the Probation officer.

D. Denial of Right of Appeal. Failure to give notice of appeal for defendant, failure to advise filing notice of appeal, deceiving the defendant as to the existence of an appeal, refusal of trial counsel to turn over case files for post-conviction relief.

E. Federal Sentencing Guidelines. Failure to argue for a reduction in base offense level, I was incarcerated in non-federal institution (county jail) for (5) months with extraordinary conditions. I was a first time offender and was eligible for two point reduction for my minor role.

F. Conviction obtain by use of false evidence gained pursuant to an unconstitutional search and seizure—Fourth Amendment Violation. No record of a search warrant up to this date.

Motion to Vacate at 5–6, and unnumbered page.

The Motion to Vacate was referred to a Magistrate Judge on June 14, 1999. It was redesignated for decision by the undersigned on April 18, 2001.

*Basis for Section 2255 Relief*

■ 28 U.S.C. § 2255 provides that:

[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. Relief under section 2255 is available only "for constitutional error, lack of jurisdiction, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Graziano v. United States*, 83 F.3d 587, 589–90 (2d Cir.1996) (internal quotation marks and citations omitted).

*Effect of Rosa's Failure to Appeal*

■ A section 2255 motion may not be used as a substitute for a direct appeal. *See United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Where a petitioner does not bring a claim on direct appeal, he is barred from raising that claim in a subsequent section 2255 proceeding unless he can establish both cause for the procedural default and actual prejudice resulting therefrom. *See, e.g., Amiel v. United States*, 209 F.3d 195, 198 (2d Cir.2000) (citing *Billy–Eko v. United States*, 8 F.3d 111, 115 (2d Cir.1993)); *United States v. Canady*, 126 F.3d 352, 359–60 (2d Cir.1997) (citing *Reed v. Farley*, 512 U.S. 339, 355, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994)); *Campino v. United States*, 968 F.2d 187, 189 (2d Cir.1992). This rule also applies where the defendant fails to appeal at all. *See United States v. Pipitone*, 67 F.3d 34, 38 (2d Cir.1995) ("cause and prejudice" requirement applies where there is a "complete failure to take a direct appeal"). The term "cause" means "something *external* to the petitioner, something that cannot be fairly attributed to him." *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (emphasis in original).

■ Where a ground raised in a section 2255 motion is based on ineffective assistance of counsel, however, the rule requiring the ground to have been raised on appeal does not apply on the theory that the ineffective assistance of counsel itself provides the "cause" for the failure to appeal the issue. *See, e.g., Bloomer v. United States*, 162 F.3d 187, 192 (2d Cir.1998); *Riascos–Prado v. United States*, 66 F.3d 30, 34–35 (2d Cir.1995) (citing *Billy–Eko v. United States*, 8 F.3d at 115). Thus, to the extent that Rosa raises a *bona fide* claim of ineffective assistance of counsel, the doctrine requiring that claims be

raised first on appeal would not bar him from obtaining section 2255 review.

*Effect of Rosa's Agreement Not to Seek Section 2255 Relief*

In this case, another potential bar to Rosa's motion is his having entered into a Plea Agreement under which he agreed not to seek relief under 28 U.S.C. § 2255 if—as occurred here—he received a sentence within or below the agreed-upon range of 63 to 78 months imprisonment. *See* Plea Agreement at 3.

 The law is clear that, with respect to the waiver of a right to an appeal, "a defendant's knowing and voluntary waiver of his right to appeal a sentence within an agreed upon guideline range is enforceable." *United States v. Djelevic,* 161 F.3d 104, 106–07 (2d Cir.1998); *accord United States v. Gomez–Perez,* 215 F.3d 315, 318 (2d Cir.2000) (waiver of an appeal is valid if entered into knowingly and voluntarily). Thus, a defendant "who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence [may not] then appeal the merits of a sentence conforming to the agreement. Such a remedy would render the plea bargaining process and the resulting agreement meaningless." *United States v. Salcido–Contreras,* 990 F.2d 51, 53 (2d Cir.1993). While this case law pertains to a waiver of the right to appeal, there is no "principled means of distinguishing [a section 2255] waiver from the waiver of a right to appeal," *United States v. Wilkes,* 20 F.3d 651, 652 (5th Cir.1994), and it should apply equally to Rosa's waiver of his right to seek post-conviction relief generally. *See, e.g., Gumbs v. United States,* 8 F.Supp.2d 882, 883 (S.D.N.Y.1998).

 Nonetheless, "a plea agreement containing a waiver of the right to appeal is not enforceable where the defendant claims that the plea agreement was entered into without effective assistance of counsel." *United States v. Hernandez,* 242 F.3d 110, 113–14 (2d Cir.2001) (citing *United States v. Djelevic,* 161 F.3d at 107). "The rationale is that 'the very product of the alleged ineffectiveness' cannot fairly be used to bar a claim of ineffective assistance of counsel." *Hernandez,* 242 F.3d at 114 (citing *Jones v. United States,* 167 F.3d 1142, 1145 (7th Cir.1999)). Similarly, a section 2255 waiver is unenforceable where the asserted ground for challenging the sentence is ineffective assistance of counsel in connection with the plea negotiations or agreement itself. *See Jones v. United States,* 167 F.3d at 1145; *Balbuena v. United States,* 104 F.Supp.2d 218, 220 (S.D.N.Y.2000).

Thus, to the extent that Rosa has *bona fide* claims of ineffective assistance of counsel in connection with his plea, his agreement not to seek relief under 28 U.S.C. § 2255 will not be enforced against him.

*Law Governing Claims of Ineffective Assistance of Counsel*

 To prevail on an ineffective assistance of counsel claim, the petitioner must (1) show that counsel's representation fell below "an objective standard of reasonableness" under "[p]revailing norms of practice;" and (2) "affirmatively prove prejudice" by showing that there is a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688, 693–94, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A petitioner must establish *both* counsel's deficiency and resulting prejudice to succeed on an ineffective assistance of counsel claim. *See id.* at 687, 104 S.Ct. 2052.

It is well established that "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. Thus a court must give counsel "wide latitude . . . in making tactical decisions" because a petitioner seeking to establish constitutionally ineffective assistance of counsel must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)); *see, e.g., United States v. Jones,* 918 F.2d 9, 11 (2d Cir. 1990) (counsel's decisions are not to be evaluated in "hindsight"). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052.

Where a petitioner establishes counsel's incompetence, the petitioner must still meet the second prong of the test, *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052, and show that he was prejudiced by counsel's actions. *See id.* at 693–94, 104 S.Ct. 2052. There must be a showing of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. In the context of a guilty plea, the second part of the test is met by showing "a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *United States v. Coffin,* 76 F.3d 494, 498 (2d Cir.1996) (citing *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)). It is not enough for the petitioner to show that counsel's error had "some conceivable effect" on the outcome of the case; there must be a showing that the "decision reached would reasonably likely have been different." *Strickland,* 466 U.S. at 693, 696, 104 S.Ct. 2052. *See also Glover v. United States,* 531 U.S. 198, 202, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001) ("a mere difference in outcome will not suffice to establish prejudice") (citing *Lockhart v. Fretwell,* 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993)).

### Requirement of an Evidentiary Hearing

Section 2255 provides that a court shall hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. In *Chang v. United States,* 250 F.3d 79, 84 (2d Cir.2001), the Second Circuit made clear that a Court may appropriately rule on a section 2255 motion without a testimonial hearing where (1) the allegations of the motion, accepted as true, would not entitle the petitioner to relief or (2) the documentary record, including any supplementary submissions such as affidavits, render a testimonial hearing unnecessary. 250 F.3d at 85–86. As the Supreme Court noted, even where a "hearing" of some kind is warranted, that does not

> imply that a movant must always be allowed to appear in a district court for a full hearing if the record does not conclusively and expressly belie his claim, no matter how vague, conclusory, or palpably incredible his allegations may be. The language of the statute does not strip the district courts of all discretion to exercise their common sense.

*Machibroda v. United States,* 368 U.S. 487, 495, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962). Indeed Section 2255 itself provides that a "court may entertain and determine [a Section 2255] motion without requiring the production of the prisoner at the hearing."

See also *Stokes v. United States*, 2001 WL 29997 at *2 (S.D.N.Y. January 9, 2001) (district court may rely on its own familiarity with the case and deny the motion without a hearing where the court concludes that the motion lacks "meritorious allegations that can be established by competent evidence") (citing *United States v. Aiello*, 900 F.2d 528, 534 (2d Cir.1990)).

■ As is discussed further below, each of Rosa's allegations may be addressed without a hearing. In some instances, Rosa's claim is made so broadly and conclusorily that it lacks the factual specificity that would support a vacatur of the conviction. In other instances, the materials submitted by the Government or Rosa's attorney as part of the record of this matter supply the necessary basis for the Court's decision.

*Analysis of Rosa's Claims*

■ As Rosa is proceeding *pro se*, we construe his papers liberally. *See, e.g., Hughes v. Rowe*, 449 U.S. 5, 9–10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir.2000). We have grouped his various allegations into seven separate claims, each of which is discussed below.

1. *Ineffective assistance of counsel because counsel "failed to adequately investigate and prepare for the case"*

■ Rosa alleges without explanation that his attorney "failed to adequately investigate and prepare for the case." Motion to Vacate at 5, ¶ A. *See also id.*, ¶ B (counsel "rush[ed] into plea without investigation"). Beyond these conclusory statements, Rosa gives no explanation of precisely what his attorney failed to do. For this reason alone, Rosa's claim must fail because he has provided no basis for concluding that his counsel's degree of investigation and preparation constituted representation that fell below "an objective standard of reasonableness" under "[p]revailing norms of practice." *Strickland*, 466 U.S. at 688, 693–94, 104 S.Ct. 2052.

■ In any event, Rosa's attorney, Jose Muniz, has sworn in an affidavit submitted to the Court as part of this habeas proceeding that he had "not only investigated this case, but in fact interviewed defense witnesses, four of whom were scheduled to testify at trial." *See* Affidavit of Jose Muniz ¶ 5, dated February 3, 2000 (reproduced as Exhibit A to Affidavit of Jennifer M. Moore, dated February 18, 2000) (hereinafter, "Muniz Aff."). At trial, Muniz actively participated in the cross-examination of witnesses. (*E.g.*, Tr. 127–28, 193–207, 506–27, 584–94, 654–55, 670). He also negotiated a favorable plea agreement. Based on an objective standard of reasonableness, there is no basis on which to conclude that Mr. Muniz failed to perform his job as trial counsel within professional norms.

Nor has Rosa shown that any alleged failure by trial counsel to investigate or prepare for his case resulted in "prejudice" to him under *Strickland*, 466 U.S. at 693–94, 104 S.Ct. 2052. Because Rosa pled guilty, prejudice means "a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. at 59, 106 S.Ct. 366. Rosa did not demonstrate or even allege that some further investigation into his case or preparation by counsel would have resulted in his rejecting the guilty plea or would have caused him to insist on finishing the trial.

Because Rosa has not established ineffective assistance of counsel with respect to Muniz's investigation of or preparation for Rosa's case, this claim should be rejected.

2. *Ineffective assistance of counsel because counsel failed to communicate the risks of going to trial*

▉ Rosa asserts that Muniz was ineffective because he "failed to properly communicate the risks of going to trial." Motion to Vacate at 5, ¶ A. This claim, too, is without merit. First, Rosa's conclusory statement cannot support relief under section 2255. Rosa never states what it is that his counsel told him regarding the risks of going to trial. The record is thus devoid of any evidence on which this Court could conclude that Muniz's actions fell below an objective standard of reasonableness.[3]

In addition, Rosa was not a defendant for whom a trial was some hypothetical possibility that was never realized because of his guilty plea. By the time he pled, Rosa had actually been through several days of trial testimony and had seen most of the Government's case. *See* Moore Aff. ¶ 7. In fact, the Government was in the middle of examining its last witness when he pled. *See* Government's Memorandum in Opposition to Genaro Rosa's Petition Pursuant to 28 U.S.C. § 2255 at 31. Rosa thus already had a very good idea of one of the paramount risks of going to trial: the likelihood of the Government mustering enough evidence to convict him.

The evidence presented at trial by itself suggests that Rosa could not meet the second prong of the *Strickland* test: that is, Rosa can show no prejudice from any alleged failure of counsel to explain the risks of going to trial because had he instead chosen to finish the trial, he would likely have been convicted and received a more severe sentence than he in fact got. At the time Rosa pled, the Government had already provided evidence that Rosa was caught in an apartment that was being used solely as a heroin mill (Tr. 40–41, 66–67, 243–50, 265–67) and that Rosa was seen throwing the incriminating contents of the apartment out of a window in order to hide them from law enforcement officers. (Tr. 240–59). The evidence tying Rosa to the apartment also included documentation that had not yet been offered into evidence but had been provided to counsel in discovery, such as a traffic ticket in the name of Rosa found in the apartment. Moore Aff. ¶ 5.[4]

In any event, Muniz has submitted an affidavit stating that "the plea was ex-

---

**3.** In a memorandum submitted following his Motion to Vacate, Rosa states:

> Rosa relied on his counsel's erroneous advice regarding the risks of trial in formulating his opinion to reject the plea offer or go to trial. Nonetheless Rosa was prejudiced because he did not have accurate information upon which to make his decision to accept the plea or to go to trial. Under the "Objective Evidence" precedent "[T]he fact that there is a *great disparity* between the actual maximum sentencing exposure represented by Rosa's Attorney provides sufficient objective evidence to establish the outcome of the proceedings would differ."

Memorandum of Law in Support of Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255, dated May 10, 2000, at 3 (emphasis in original). While Rosa's statements are difficult to understand, he makes no specific allegation as to what Muniz told him, let alone that what Muniz told him misrepresented the risks of going to trial. Moreover, in a later unpaginated portion of the memorandum that apparently contradicts the quoted portion above, he asserts that his counsel told him "that if he plead guilty he would only receive (60) months as opposed to (63) months in prison if he refused."

**4.** The Government also had telephone records that associated Rosa with a telephone that was used in the apartment. *See* Moore Aff. ¶ 6 & Exhibit H. This information showed that the telephone had been used to call Rosa and his co-defendants on several occasions prior to the arrest on May 6, 1997. The Court had previously ruled, however, that this documentation could not be used on the Government's direct case. *See id.*

plained to [Rosa] in great detail by me individually, and also at a joint defense meeting regarding the global plea." *See* Muniz Aff. ¶ 7. Under *Chang v. United States,* 250 F.3d at 85–86, the Court is entitled to rely on this affidavit in the face of Rosa's conclusory and unexplained assertions.

3. *Ineffective assistance of counsel because counsel never obtained a waiver of Rosa's right to a speedy trial*

■■■ Rosa alleges, somewhat confusingly, that he was incarcerated for five months before being indicted and "never waive [sic] or gave my attorney permission to do so." Motion to Vacate at 5, ¶ A. Construing his claim most liberally, it appears that Rosa is alleging that his counsel was ineffective because he waived Rosa's right to a speedy trial under 18 U.S.C. § 3162.

Rosa was arrested on May 6, 1997. *See* Moore Aff. ¶ 3. On June 5, 1997, the Government and defense counsel agreed to an Order continuing the preliminary hearing date to July 7, 1997. *See id.* at ¶ 4. The Government agreed to this Order because of continuing plea discussions with Rosa. *See id.* This Order recited that "the defendant has specifically waived his right to an indictment for an additional thirty days although the defendant is detained." Order of Continuance, *United States v. Rosa,* Mag.Dkt. No. 97–0905 (dated June 5, 1997), at 2. On July, 1997, the continuance was extended until August 7, 1997. *See* Moore Aff. ¶ 4. On August 21, 1997, Rosa was indicted. *See id.*

Again, Rosa makes no allegation whatsoever that his attorney's consents to exclude speedy trial time constituted conduct "so serous as to deprive the defendant of a fair trial." *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. Such consents are in fact commonplace where defense counsel is attempting to negotiate a plea. They thus represent a trial tactic that "might be considered sound trial strategy," *Mason v. Scully,* 16 F.3d 38, 42 (2d Cir.1994), and cannot constitute ineffective assistance of counsel. *See, e.g., United States v. Asubonteng,* 895 F.2d 424, 429 (7th Cir.) (waiver of speedy trial time through counsel's agreement to firm trial date did not constitute ineffective assistance of counsel), *cert. denied,* 494 U.S. 1089, 110 S.Ct. 1830, 108 L.Ed.2d 959 (1990). In any event, Muniz has informed Government counsel that he obtained Rosa's consent to all the continuances. Moore Aff. ¶ 8; *see also* Affidavit of Christine Chung ¶ 5, dated June 5, 1997 (reproduced in Affidavit of Jennifer M. Moore, dated June 5, 1997, as Exhibit E).

Finally, even if the consents were somehow improper, Rosa could not meet the "prejudice" prong of the *Strickland* test because he has not shown that, absent the waiver, the result in this case would have been any different. There is no reason to conclude that a grand jury would not have been convened to indict Rosa on an earlier date or that an earlier indictment by the grand jury would have resulted in Rosa choosing not to plead guilty. Certainly, Rosa's submissions provide no basis for this conclusion. Accordingly, this claim should be rejected.

4. *Plea not knowingly and voluntarily made and also made without the effective assistance of counsel*

Rosa makes a hodgepodge of allegations regarding his plea of guilty. Thus he states that:

Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea. Lying to the defendant as to sentence to be imposed,

rushing into plea without investigation, plea not knowingly and intelligently made (see attached from psychologist the IQ is extremely low). His Attorney was well aware that Mr. Rosa didn't comprehend very well but force him to sign a plea agreement he never seen or went over before. Plea urged by counsel for the sake of a contingent plea agreement for co-defendant.

Motion to Vacate at 5, ¶ B.

These allegations regarding his plea are for the most part made in such a conclusory manner that it is difficult to discern what Rosa is claiming. A number of these allegations appear unrelated to any claim of ineffective assistance of counsel, though some are arguably based on such a claim. We will assume that Rosa is making claims both with respect to the knowingness and the voluntariness of his plea and with respect to the assistance given to him by counsel in connection with his plea. Each of these topics is discussed separately.

a. *Knowingness and Voluntariness of Plea*

To the extent that Rosa's allegations amount to an attack on the knowingness and voluntariness of his plea—without a concomitant attack on the effective assistance of counsel—they are barred because they should have been raised on direct appeal. *See, e.g., United States v. Canady,* 126 F.3d at 359–60; *Billy–Eko v. United States,* 8 F.3d at 115; *accord United States v. Pipitone,* 67 F.3d at 38. Rosa has shown no cause for his failure to raise on direct appeal any claims regarding the knowingness and voluntariness of his plea. For this reason alone, his attack on this ground must be rejected.[5]

In any event, Rosa should not be heard to attack his plea because the plea on its face shows it was knowing and voluntary. The District Judge advised Rosa at length of the penalties he faced and the constitutional rights he would be giving up by going to trial. (Tr. 759–63). Rosa specifically stated that he understood these penalties and these rights. (*Id.*) The District Judge also reviewed the Plea Agreement at length. (Tr. 763–765). Through his answers, the defendant stated that he had read the agreement, discussed it with his attorney, that he understood the sentencing guidelines calculations, that he understood the terms of the agreement, and that he had signed it. (*Id.*) He stated that no one had "coerced or threatened" him to plead guilty and that he was pleading "voluntarily and of his own free will." (Tr. 765, 767). Rosa also stated in his own words what he had done that made him guilty of the offense charged. (Tr. 766). Thus, the District Court correctly found that Rosa's plea was knowing, voluntary and had an adequate basis in fact. (Tr. 767–68).

A defendant's statements at his plea allocution "carry a strong presumption of verity." *Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). "Absent credible reasons for rejecting appellant's statements, [such statements] establish that the plea was entered knowingly and voluntarily." *United States v. Arias,* 166 F.3d 1201, 1998 WL 852740 (2d Cir.1998). *Accord United States v. Gonzalez,* 970 F.2d 1095, 1100 (2d Cir.1992) (statements at plea allocution are "conclusive" absent reasons "justifying departure from their apparent truth") (citation omitted).

5. Rosa's claims regarding his attorney's alleged failure to appeal are discussed *infra* in section 6.

■ Here, there is no basis on which to conclude that Rosa's own statements regarding the voluntariness of his plea are anything other than truthful. Rosa's allegations merely deny that his plea was voluntary without stating why this is so. Rosa's Motion to Vacate is thus quite unlike what occurred in *Blackledge,* where the defendant had "indicated exactly what the terms of the [allegedly improper promise] were; when, where, and by whom the promise had been made; and the identity of one witness to its communication." 431 U.S. at 76, 97 S.Ct. 1621. Instead, Rosa has offered nothing but a list of conclusory allegations of being "forced" to sign the agreement, of some unidentified person "lying" to him regarding his sentence, of his "rushing" into the plea without investigation and the plea not having been "knowingly and intelligently" made. Motion to Vacate at 5, ¶ A. *Blackledge* makes clear that, following a guilty plea, a habeas petitioner's "subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal." 431 U.S. at 74, 97 S.Ct. 1621. Accordingly, Rosa's claims should be summarily dismissed.

■ The only assertion that has the slightest degree of specificity is Rosa's allegation that his IQ is "extremely low," Motion to Vacate at 5, ¶ B. This allegation does not alter this Court's conclusion that Rosa's plea was knowing and voluntary. Rosa's only support for this contention is an evaluation form, attached to his Motion to Vacate, that relates to an assessment "to determine if special learning needs are required in the Education Department." The form goes on to say that Rosa sustained a "serious head trauma" during his junior year in high school and he "was placed in a special needs class for students with learning disabilities" following the accident. Rosa, however, never raised any

question regarding his competence during the plea or sentence. He answered all questions appropriately and responded affirmatively when asked if he could "understand" the proceedings. (Tr. 765). He addressed the Court at his sentencing, speaking coherently about the medical condition of various family members. (S.23–24). No one who dealt with Rosa directly—including the Court, his attorney or the probation department—expressed any doubts regarding Rosa's ability to understand what was happening. Moreover, Rosa himself never informed anyone at any time regarding any inabilities he had in this area, including any claimed head injury. *See* Muniz Aff. ¶ 3. In fact, he told the probation officer that he dropped out of high school due to "immaturity" and "ignorance." *See id.* (referring to the Presentence Report at 10, ¶ 53). The allegation regarding his low IQ thus does not in any way affect Rosa's ability to have intelligently entered into the plea in this case. *See Godinez v. Moran,* 509 U.S. 389, 396, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993) (a defendant is competent to plead guilty if he has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has a "rational as well as factual understanding of the proceedings") (citing *Dusky v. United States,* 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960)).

#### b. *Ineffective Assistance of Counsel*

To the extent Rosa's allegations regarding the plea are meant to assert Muniz was ineffective with respect to Rosa's decision to plead, these allegations too do not justify habeas corpus relief. The only specific allegations Rosa makes regarding his attorney's conduct (apart from the issue of whether counsel failed to properly investigate and prepare for the case, discussed *supra* section 1) are that Muniz was "well aware that Mr. Rosa didn't comprehend

very well"; that Muniz "force[d] him to sign a plea agreement"; that Rosa never "[saw] or went over" the Plea Agreement before he signed it; that the plea was "urged by counsel for the sake of a contingent plea agreement for codefendants" and that counsel "fail[ed] to request time in which to review Jencks material." Motion to Vacate at 5, ¶ B.

In each instance, either the face of these claims do not entitle Rosa to relief or they are defeated by an examination of the record as a whole, including the transcript of the plea and Muniz's own affidavit.

Muniz has submitted an affidavit in which he states that "the plea was explained to [Rosa] in great detail by me individually, and also at a joint defense meeting regarding the global plea." Muniz Aff. ¶ 7. He also explains that he was not advised that Rosa had a low IQ, as he now claims, or any prior head trauma. *See* Muniz Aff. ¶ 3. During the allocution, the District Judge went over the elements of the Plea Agreement in great detail, including Rosa's discussions with his attorney. Included in the colloquy was the following:

Q. . . . [Y]ou are represented, are you not, by Mr. Muniz?

A. Yes, sir.

\*\*\*

Q. Are you satisfied with your counsel?

A. Yes, sir.

Q. Have you told him everything you know about this matter?

A. Yes, sir.

Q. And have you had a full opportunity to discuss this matter with him?

A. Yes, sir.

(Tr. 759–60).

Later in the colloquy, the Court asked specific questions regarding the Plea Agreement:

Q. Now, I have been furnished with a copy of the plea agreement in your case, which we will mark as Court Exhibit 3 to today's proceedings. And that appears to be a letter dated January 9, 1998, signed by the government and by your counsel, and by you. Are you familiar with that letter agreement?

A. Yes, sir.

Q. And have you read it?

A. Yes, sir.

Q. And have you discussed it with your counsel?

A. Yes, sir.

Q. Do you understand the terms in that letter?

A. Yes, sir.

(Tr. 763–64). Still later in the allocution, the Court asked whether Rosa had had a chance to discuss the sentencing guidelines with his counsel. Rosa responded, "Yes, sir." (Tr. 764). The affidavit of Muniz together with the record of allocution make clear that Muniz properly discharged his duties in discussing the plea with Rosa and thus he was not ineffective.

■ With respect to the claim of coercion, the Court specifically asked Rosa: "Has anyone coerced you or threatened you to get you to plead guilty." (Tr. 765). Rosa, who was speaking under oath (Tr. 757), answered, "No." (Tr. 765). Later the Court asked "Are you pleading voluntarily and of your own free will?" Rosa answered "Yes." (Tr. 767). There is no basis on which to accept Rosa's current allegation that these responses to the Court were perjurious. Indeed, the allegations in his Motion to Vacate as to coercion flatly contradicting the statements in his allocution would be legally insufficient were they offered to defeat a motion for summary judgment in a civil action. *See, e.g., Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir.2001) ("factual allegations that might

otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts her own prior deposition testimony") (citing *Bickerstaff v. Vassar College*, 196 F.3d 435, 455 (2d Cir.1999); *Raskin v. Wyatt Co.*, 125 F.3d 55, 63 (2d Cir.1997)). As Rosa's allegations would be insufficient to defeat a motion for summary judgment, the allegations are surely insufficient in the section 2255 context where there is not even a requirement that a court hear live testimony on disputed issues of fact. *See Chang v. United States*, 250 F.3d at 86.[6]

 Additionally, Rosa is entitled to no relief based on his assertion the plea was made "for the sake of a contingent plea agreement for co-defendants." Motion to Vacate at 5, ¶ B. The Government's acceptance of Rosa's plea was indeed contingent on all four defendants in the action entering into a plea. *See* Plea Agreement at 3. This Court is unaware of any authority, however, suggesting that there is anything improper about such a plea arrangement. *Cf. United States v. Woods*, 973 F.2d 677, 678 (8th Cir.1992) (noting that the Government, after making an offer requiring all defendants to plea, may then withdraw the offer if that condition is not met); *Nix v. United States*, 111 F.Supp.2d 186, 188 (E.D.N.Y.2000) (global plea agreement enforced). As a result, Muniz's recommendation that Rosa plead guilty under such an arrangement does not show ineffective assistance of counsel.

 Finally, Rosa also cannot obtain habeas relief on the ground that his attorney "rushed" his plea or "fail[ed] to re-quest time in which to review *Jencks* [18 U.S.C. § 3500] material." Motion to Vacate at 5, ¶ B. Certainly, the district court gave all the defendants in this case a deadline to make a decision as to whether there should be a plea. (Tr. 699–700). This deadline arose, however, only because the defendants expressed an interest in pleading when the trial was nearly concluded. *See* Moore Aff. ¶ 7. The trial judge properly required the defendants to decide promptly whether or not they in fact wanted to plead. (Tr. 700). Notably, the district court's original one-hour deadline of 11:10 a.m. (Tr. 701) to make this decision was extended until after 2:00 p.m. that day. (Tr. 702).

During the allocution, the Court specifically asked if Rosa "had a full opportunity to discuss" the plea with Muniz. Rosa responded, "Yes, sir." (Tr. 760). (*See also* Tr. 764 (Rosa affirms that he "had a chance" to discuss the sentencing guidelines with counsel.)). Muniz also has submitted an affidavit saying that the plea was explained to Rosa by Muniz individually and also at a joint defense meeting regarding the global plea. *See* Muniz Aff. ¶ 7. The circumstances of this plea do not show that Muniz acted below an objective standard of competence in advising his client to plead guilty.

5. *Ineffectiveness of Counsel At the Sentencing Phase*

Rosa makes the following claims regarding his counsel's conduct at sentencing:

Counsel failed to raise timely, formal, written objections to the PSI erroneous computation of the amount drugs attributed to the defendant, Mr. Rosa stated

---

**6.** While Muniz did not directly address in his affidavit whether he forced Rosa to plead guilty, Muniz has informed the Government that he did not coerce Rosa into pleading guilty in any way. *See* Moore Aff. ¶ 8. Also, Muniz's affidavit by implication suggests that he did not coerce Rosa. *See* Muniz Aff. ¶ 7 ("Rosa was advised of all his rights by me, before, throughout and after the trial").

he never seen any drug. Failure to object to ex parte information provided to the court before sentencing. Counsel failed to sit in on the interview with the Probation officer.

&ast; &ast; &ast; &ast; &ast; &ast;

Federal Sentencing Guidelines. Failure to argue for a reduction in base offense level, I was incarcerated in non-federal institution (county jail) for (5) months with extraordinary conditions. I was a first time offender and was eligible for two point reduction for my minor role Motion to Vacate at 5, ¶¶ C, E.

### A. Effect of Rosa's Waiver of Right to Seek Section 2255 Relief

██ As a threshold matter, this Court's ruling that Rosa received effective assistance of counsel in connection with his plea now bars the Court's consideration of *any* claims regarding his sentence. This is because Rosa agreed not to seek relief under 28 U.S.C. § 2255 if he were sentenced within the sentencing range specified in the Plea Agreement. Rosa was indeed sentenced within that range and is now bound by the Plea Agreement.

We have so far ignored the Plea Agreement for purposes of considering Rosa's claims relating to his plea only because Rosa made an ineffective assistance of counsel claim *with respect to the plea itself.* Having concluded that the plea was made knowingly, voluntarily and with the effective assistance of counsel, Rosa must be held to the elements of that plea. One of those elements, contained within the Plea Agreement, is that Rosa not seek relief under Section 2255. *See* Plea Agreement at 3. Thus, the Plea Agreement bars all of Rosa's claims that relate to his sentencing.

The Second Circuit has upheld a bar to review of a conviction contained in a plea agreement in a situation similar to Rosa's. In *United States v. Djelevic,* 161 F.3d 104,

106–07 (2d Cir.1998), the defendant contended that his waiver of the right to appeal "should not bar consideration of his appeal because counsel was ineffective not at the time of the plea, but at sentencing." *Id.* at 107. The Second Circuit "emphatically reject[ed] this contention." *Id.* The court noted that:

despite his effort to dress up his claim as a violation of the Sixth Amendment, [the defendant] in reality is challenging the correctness of his sentence under the Sentencing Guidelines, and is therefore barred by the plain language of the waiver contained in his plea agreement with the government. . . . If we were to allow a claim of ineffective assistance of counsel at sentencing as a means of circumventing plain language in a waiver agreement, the waiver of appeal provision would be rendered meaningless. This we decline to do. "[T]he waiver provision is a very important part of the agreement—the Government's motivating purpose, decreased effort and expense of protracted litigation, is not well-met if the defendant is permitted to appeal that to which he has agreed." *Rosa,* 123 F.3d at 97. Accordingly, we do not reach the merits of [defendant's] ineffectiveness claim.

*Djelevic,* 161 F.3d at 107. This reasoning applies equally to Rosa's waiver of his right to seek relief under 28 U.S.C. § 2255. Thus, all of Rosa's claims as to his sentence should be denied because they are barred by the waiver contained in his plea agreement.

### B. The Merits of Rosa's Claims

██ In any event, all of these claims would have to be denied even if this Court were to ignore the effect of the Plea Agreement and consider them on the merits. With respect to the weight of the drugs, Muniz obviously could not be fault-

ed for failing to object to the weight of the drugs because Rosa himself had signed the January 9, 1998, letter (regardless of its effectiveness as a plea agreement) stating that Rosa agreed that "the drug quantity attributable to the defendant, was 368 grams of heroin." Plea Agreement at 2. Even assuming *arguendo* that this letter did not legally bind Rosa as a plea agreement, Muniz cannot be faulted for not objecting to a pre-sentence report that concurred with Rosa's own statement. *See, e.g., Bolender v. Singletary,* 16 F.3d 1547, 1573 (11th Cir.1994) ("[T]he failure to raise nonmeritorious issues does not constitute ineffective assistance.")

 The same is true for the claim that Muniz should have sought a departure based on Rosa's having had a "minor role" in the offense. Rosa again provides no evidence that there would have been any basis for such an argument. The evidence presented at trial indicated that Rosa was equally culpable as any other defendant inasmuch as all of them were caught in the apartment and all participated in destroying evidence.

 With respect to the claim that Muniz should have argued for a reduction in his sentence due to Rosa's incarceration in a county jail for "six months," the record is clear that Rosa was held only for a period of six weeks prior to his sentence. *See* Advice of Sanctions and Penalties (reproduced in Affidavit of Jennifer M. Moore, dated June 18, 1997, as Exhibit F).

In any event, it would be within the professional range of competent counsel not to move for a departure on this basis when departures for grounds not mentioned in the sentencing guidelines are "highly infrequent." *United States v. Sutton,* 973 F.Supp. 488, 492 (D.N.J.1997).[7]

 Finally, Rosa asserts that Muniz was ineffective for failing to appear at Rosa's interview with the Probation Department. Rosa does not contest that Muniz wrote to the Probation Department and discussed his letter with Rosa. *See* Muniz Aff. ¶¶ 4, 8. Under these circumstances, we cannot say that Muniz's alleged conduct fell below an objective standard of reasonableness. In any event, Rosa has not shown any prejudice from this alleged failure. He has not suggested how Muniz's presence would have resulted in any change in the report, let alone a more favorable report. The Probation Department in fact recommended that Rosa be sentenced at the lowest possible end of the stipulated sentencing range and the Court so sentenced him. Thus, counsel's failure to appear at the probation interview was irrelevant to Rosa's ultimate sentence.[8]

6. *Ineffective assistance of counsel regarding an appeal*

As to this claim, Rosa alleges:

Failure to give notice of appeal for defendant, failure to advise filing notice of appeal, deceiving the defendant as to the

---

7. In addition, Rosa could not show prejudice from failure to argue for a departure because it is highly unlikely that the sentencing judge would have granted the request. While one district judge has granted a departure based on conditions of incarceration, that case involved a 32–month confinement under "deplorable conditions" and its reasoning has been rejected in other cases. *See generally United States v. Booher,* 962 F.Supp. 629, 635–636 (D.N.J.1997) (discussing cases).

8. The Court also rejects Rosa's claim that counsel "failed to object to ex parte information provided to the Court before sentencing." Motion to Vacate at 5, ¶ C. The record is devoid of any evidence of such a contact, Rosa has not specified what that contact consisted of, and in any event Rosa has not alleged that Muniz was aware of any such contact.

existence of an appeal, refusal of trial counsel to turn over case files for post-conviction relief.

Motion to Vacate at 5, ¶ D.

 To begin with, while Rosa states that there was a "failure to advise filing notice of appeal [sic]," the Court specifically informed him of this right at the sentencing. (*See* S. 28). All of Rosa's claims regarding an appeal, however, must be rejected for several reasons. First, Rosa could not file an appeal by virtue of his Plea Agreement. This agreement barred Rosa from appealing any sentence within or below the guidelines range of 63–78 months. *See* Plea Agreement at 3. Rosa in fact received 63 months. (S.26). Thus, his attorney was not ineffective in failing to file a notice of appeal because no appeal could be pursued under the Plea Agreement.[9]

 Second, because Rosa is using section 2255 as a vehicle to challenge Muniz's effectiveness as an appellate attorney, the Plea Agreement bars such claims as well. As described in section 5, *supra*, Rosa is barred from attempting to relitigate his sentence because he entered into a valid plea agreement that barred him from seeking any relief under section 2255. The same principle bars him from seeking to avoid the effect of his agreement by recasting his claim as an ineffective assistance of counsel claim. *See Djelevic*, 161 F.3d at 107. Rosa had a specific agreement barring him from seeking section 2255 relief in this case. Because we assume the validity of the Plea Agreement (including the waiver of the right to seek

post-conviction relief), Rosa must be deemed bound by that Agreement. Under the principle articulated in *Djelevic*, he cannot avoid its effect simply by couching his claim in terms of ineffective assistance of counsel. 161 F.2d at 107.

Even if the Court were to consider Rosa's claim on the merits, it would still have to be denied. The Supreme Court has held that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores–Ortega*, 528 U.S. 470, 477, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000) (citing *Rodriquez v. United States*, 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969)). Here, Rosa has never stated that he gave his attorney specific instructions to file a notice of appeal. He states only that the notice of appeal was not "give[n]."

 The Supreme Court has also held that "counsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Roe v. Flores–Ortega*, 528 U.S. at 480, 120 S.Ct. 1029. This rule is inapplicable to the present case because, regardless of the legal effect of the Plea Agreement, Muniz had no reason to believe that there were grounds for an appeal by Rosa and Rosa never stated to Muniz that he wished to appeal. Muniz has stated that he consult-

---

9. Rosa's waiver of his right to appeal was spelled out not only in the Plea Agreement but also during the sentencing proceeding. After enumerating various rights that Rosa was giving up by pleading guilty, the District Judge told Rosa that "if you were convicted of Count Two, you would have the right to ap-

peal your conviction." He then asked Rosa if he understood that "by pleading guilty to Count Two, you would be giving up as to that count each and every one of the rights we just described, do you understand that?" Rosa responded: "Yes, sir." (Tr. 763).

ed with Rosa regarding an appeal to the extent of advising him that pursuant to the Plea Agreement, "the only grounds to appeal was the sentence." Muniz Aff. ¶ 7. He also advised Rosa to notify him (in writing or by phone) if he wanted to appeal. *Id.* Rosa, however, never contacted him. *Id.* ¶ 7. Muniz's actions met the requirements of *Flores–Ortega* and thus did not constitute ineffective assistance of counsel with respect to any appeal. *Accord Sarroca v. United States,* 250 F.3d 785, 788 (2d Cir.2001) (where there was nothing else in the record to indicate the petitioner had requested counsel to file an appeal, counsel's affidavit stating that petitioner had not requested an appeal was sufficient to deny section 2255 relief).[10]

### 7. *Fourth Amendment Violation*

 Rosa's final claim is that his plea of guilty was based on unconstitutionally seized evidence because there is "no record of an [sic] search warrant up to this date." Motion to Vacate, unnumbered page. This claim fails for a number of reasons. First, Rosa of course is barred from raising any claim on this Section 2255 petition not related to the effective assistance of counsel by virtue of his Plea Agreement. *See supra* section 5.A. Second, it is well-settled that habeas corpus

review under 28 U.S.C. § 2255 is not a substitute for a direct appeal. *See, e.g., United States v. Frady,* 456 U.S. at 165, 102 S.Ct. 1584; *United States v. Gordon,* 433 F.2d 313, 314 (2d Cir.1970) ("A motion under section 2255 may not be used to review grounds which defendant failed timely to raise at trial and on appeal."). Where a defendant does not bring a claim on direct appeal, the defendant is barred from raising the claim in a subsequent proceeding under 28 U.S.C. § 2255 unless he or she can establish cause for the procedural default and actual prejudice resulting therefrom. *See, e.g., Amiel v. United States,* 209 F.3d at 198. Rosa has not established any cause for his failure to appeal. Third, the fact that Rosa pled guilty to the charges prevents consideration of a possible Fourth Amendment violation because a knowing and intelligent guilty plea forecloses "independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973).

### *CONCLUSION*

For the foregoing reasons, it is recommended that Rosa's Motion to Vacate be denied.[11]

---

**10.** Rosa's assertion that counsel "refus[ed] ... to turn over case files for post-conviction relief" does not form the basis of habeas relief. Rosa does not explain what files or documents he needed or why they had any bearing on his ability to seek relief. In the absence of such allegations we cannot say that counsel's actions either fell "below an objective standard of reasonableness" or that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 688, 693–94, 104 S.Ct. 2052.

**11.** On June 1, 1999, Rosa submitted a "Motion to Disclose" requesting "the court to

order the disclosure of the record of the number of Grand Jurors concurring in the finding of the indictment." Rosa further stated that his request "is limited to that document required to be kept by Rule (6), that records that twelve (12) Jurors concurred in the return of the indictment as require [sic] by Rule (6)(F)," and that he might use the document to provide grounds for a motion to dismiss the indictment. *Id.* (emphasis omitted).

Fed.R.Crim.P. 6(c) provides that "[t]he foreperson ... shall keep a record of the number of jurors concurring in the finding of every indictment ... but the record shall not be made public except on order of the court." The defendant may obtain disclosure only "upon a showing that grounds may exist for a

**410**

*Notice of Procedure for Filing of Objections to this Report and Recommendation*

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report to file any written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Jed S. Rakoff, 500 Pearl Street, New York, New York 10007, and to the chambers of the undersigned at 40 Centre Street, New York, New York 10007. Any requests for an extension of time to file objections must be directed to Judge Rakoff. The failure to file timely objections will result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn,* 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). September 24, 2001.

motion to dismiss the indictment because of matters occurring before the grand jury." Fed.R.Crim.P. 6(e)(3)(C)(ii). The burden is on the defendant to demonstrate a "particularized need" for the material sought. *See United States v. Sells Eng'g,* 463 U.S. 418, 443, 103 S.Ct. 3133, 77 L.Ed.2d 743 (1983) (citing *Pittsburgh Plate Glass Co. v. United States,* 360 U.S. 395, 398–401, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959)). Here, Rosa has not overcome the strong presumption of regularity in grand jury proceedings, a presumption that cannot be outweighed by conclusory or speculative allegations of misconduct. *See generally Hamling v. United States,* 418 U.S. 87, 139 n. 23, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *United States v. Torres,* 901 F.2d 205, 233 (2d Cir.1990). *See also United States v. Jailall,* 2000 WL 1368055 at *2 (S.D.N.Y. September 20, 2000) ("The standard applied to disclosure is stringent.") (internal quotation marks and citation omitted). Rosa has not demonstrated a "particularized need" for

the voting record of the grand jury. Because Rosa does not actually allege a factual or legal ground which raises any question regarding the voting record of the grand jury, his request should be denied. *See generally Torres,* 901 F.2d at 233 ("A review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct."); *United States v. Dacunto,* 2001 WL 13343 at *10 (S.D.N.Y. Jan.5, 2001) ("speculative and conclusory allegations of misconduct" insufficient); *United States v. Wilson,* 565 F.Supp. 1416, 1436 (S.D.N.Y. 1983) (defendant's "unsupported view that abuses may have occurred ... with respect to the grand jury system is insufficient in this case to overcome the presumption of regularity of the grand jury proceedings"). *Cf. Gaither v. United States,* 413 F.2d 1061 (D.C.Cir. 1969) (permitting disclosure of record where defendant alleged a specific defect in the grand jury process in a motion to dismiss the indictment).