**UNITED STATES of America,
Appellee,**

v.

**Troy VAVAL, aka Justice Vaval,
Defendant–Appellant.**

**Docket No. 04–0121–CR.**

United States Court of Appeals,
Second Circuit.

Argued: Jan. 6, 2005.

Decided: April 12, 2005.

John A. Cirando (Lisa M. Cirando, Susan R. Rider, Michelle A. Olawoye, on the brief), D.J. & J.A. Cirando, Esqs., Syracuse, New York, for Defendant–Appellant.

Colleen Kavanagh, Assistant United States Attorney (Roslynn R. Mauskopf, United States Attorney for the · Eastern District of New York, Jo Ann M. Navickas, Assistant United States Attorney, on the brief), Brooklyn, New York, for Appellee.

Before: WINTER, SOTOMAYOR, and B.D. PARKER, Circuit Judges.

WINTER, Circuit Judge.

■ Troy Vaval appeals from his conviction and sentence after pleading guilty before Judge Amon. Appellant participated in a scheme to rob and carjack a purported illegal gun buyer, actually a confidential informant carrying federal funds. On appeal, appellant principally argues that: (i) he should be permitted to withdraw his guilty plea because the district court violated Fed.R.Crim.P. 11(b)(1)(K) by failing to inform him of mandatory restitution; and (ii) he should be resentenced before a different judge or permitted to withdraw his guilty plea because the government's arguments at sentencing violated the plea agreement.[1] We conclude that the failure to inform him of mandatory restitution in the amount of $6500 was not plain error because it would not have affected his decision to plead guilty. However, we also conclude that the government breached

the plea agreement by engaging in sentence advocacy, and we therefore vacate appellant's sentence and remand for resentencing.

## BACKGROUND

a) *The Indictment*

Appellant was charged with carjacking, 18 U.S.C. § 2119(1) (Count I), robbery of federal money using a dangerous weapon, 18 U.S.C. § 2114(a) (Count II), and possession of a firearm with an obliterated serial number, 18 U.S.C. §§ 922(k), 924(a)(1)(B), 3551 et seq. (Count VI), by a felon, 18 U.S.C. §§ 922(g)(1), 924(a)(2), 3551 et seq. (Count V). The indictment also charged two co-defendants.

The government alleged that on January 2, 2003, appellant met with a confidential informant ("CI") in Queens, New York after having promised to sell the CI firearms. Appellant told the CI to follow him into an alley, where the CI was ambushed by appellant and three other individuals using two guns, one of them a Tec–9. Appellant took $6500 of federally-supplied "buy money" and a gold chain from the CI; another attacker took his wallet and rings. Appellant then told his co-defendants to put the CI in the CI's car and take the

---

**1.** Appellant also claims on appeal that his counsel was ineffective because of her failure to object to the Rule 11 violation and her failure to file a "Sentencing Memorandum." We disagree. Even if we assume that counsel's actions "fell below an objective standard of reasonableness," *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), appellant has not alleged, much less proven, a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, 104 S.Ct. 2052. Rather, appellant claims only that he "would not have pleaded guilty without knowing the full consequences of his plea, and would have had an effective advocate during sentencing." Such allegations do not satisfy *Strickland*'s preju-

dice prong. Appellant also argues that his guilty plea was not knowing and voluntary because his sentence was higher than the statutory maximum for the crime to which he pled, and because his sentence was subject to factual enhancements even though he neither stipulated to the relevant facts nor consented to judicial fact-finding. This claim is without merit. The statutory maximum for this offense is 25 years, 18 U.S.C. § 2114(a), and the District Court informed appellant of this maximum. The actual sentence imposed is 168 months—well below the statutory maximum. To the extent appellant raises any issues as to the constitutionality of his sentence, we need not reach those claims in light of our remand for resentencing before a different district court judge.

keys. Appellant got into his own car; two of the other three attackers drove the CI's car further into the alley and were in the process of taking off the CI's pants when the police arrived. Before his arrest, appellant attempted to flee, driving at high speeds down a service road, on sidewalks, and in the middle of roads toward oncoming traffic.

### b) *The Plea Agreement*

Appellant pleaded guilty to Count II of the indictment—robbery of federal property with a dangerous weapon, 18 U.S.C. § 2114(a)—pursuant to a plea agreement. The agreement stated that the maximum term of imprisonment was 25 years, the maximum fine was $250,000, and restitution was "N/A" under 18 U.S.C. § 3663. The remaining counts were to be dismissed. The agreement further stated that the government "will advise the Court and the Probation Department of information relevant to sentencing, including criminal activity engaged in by the defendant, and such information will be used by the Court in determining the defendant's sentence." However, the government also agreed that "based upon information now known to" the U.S. Attorney's Office, it would "take no position concerning where within the Guidelines range determined by the Court the sentence should fall," and "make no motion for an upward departure." The government would not be bound by these two provisions if "information relevant to sentencing" became known to it after the date of the plea agreement, or if it determined that appellant violated the agreement.

### c) *The Guilty Plea*

Appellant signed the plea agreement and pleaded guilty on September 9, 2003. At the plea colloquy, the court did not mention restitution but did tell appellant that he was subject to a mandatory $100 special assessment and a maximum fine of $250,000. Appellant, through counsel, asked "to be assured ... that the U.S. Attorney agreed not to move for an upward departure, and not to argue where in the guideline range he should be sentenced." The government agreed to this characterization of the plea agreement. Appellant then stated that he "planned" the scheme to steal federal money, that two other individuals were involved, and that a co-defendant pointed a Tec-9 during the robbery. The court accepted the plea.

### d) *The Presentence Report*

The Presentence Report ("PSR") recommended an offense level of 32, a Criminal History Category ("CHC") of II, and, therefore, a Guidelines range of 135 to 168 months. It also stated, correctly, that restitution of $6500 was mandatory. The PSR's offense level was higher than that specified in the plea agreement, because it included a two level enhancement for fleeing from the police in a dangerous manner. The PSR's recommended CHC was lower than that of the plea agreement—II rather than III—because the plea agreement CHC had been calculated incorrectly to include outdated crimes. Finally, the PSR emphasized appellant's supervisory role and seemed to show that five participants were involved in the crime, justifying a three level role adjustment; nevertheless, the PSR recommended only the two level role adjustment that had been recommended in the plea agreement. Appellant did not object to any aspects of the PSR.

### e) *The Sentencing*

At sentencing, the government noted that both the plea agreement and the PSR had erroneously given appellant a two-level rather than a three-level role adjustment. Noting that its mistake was caused

by a misunderstanding of the law, the government stated:

Judge, I did agree to the two level enhancement in the plea agreement for a role adjustment. I was speaking to the probation officer before court today. I wanted to point out to the Court that although the probation officer also only gave two points for the adjustment of role offense, ... as the Court will recall the testimony at [the co-defendant's] trial did bring out that actually including the defendant there were five participants in this crime. So, technically, I think that it would be three levels added instead of two for the role adjustment.

Appellant objected, claiming that this statement violated the plea agreement.

The district court decided to use the Guidelines calculations specified in the PSR, because the role adjustment issue was not raised in a timely fashion and because it believed that the added level would not affect appellant's sentence. Having set the Guidelines range at 135 to 168 months, the court then gave the parties a chance to speak. Appellant's counsel asked for a sentence at the bottom of the range, while appellant apologized for his conduct and asked for leniency. The government, after noting that it had "waived the government's right in the plea agreement to ask for an upward departure or to ask the Court to sentence the defendant in a particular place in the range of the guidelines," stated:

I would like to point out a couple of things to the Court. Again, in the plea agreement we believed that the defendant was in [CHC] three. It turns out that he is in [CHC] two. I find this defendant's criminal history appalling. And the fact that he can sit here today and say that he made a mistake, I find completely disingenuous. Because it is a mistake that he has made over and

over and over again in terms of robbing people at gun point and using violence to commit robberies. I understand that the guidelines preclude us from looking at or calculating certain offenses. But certainly this is not this defendant's first or second offense.

Also, the instant conduct shows that this defendant was the ring leader of this crime. He punched the victim in the face. He orchestrated three people who were armed with guns. One was an Intratek AB–10 semi automatic assault weapon. To be lying in wait for a victim, to rob him, to abduct him. There was testimony at the trial brought out that he was going to be killed. I just ask the Court to consider all of that when making the Court's decision about where to sentence this defendant.

Appellant objected that the government was violating its agreement not to take any position about where within the Guidelines range appellant should be sentenced and asked that the government's remarks be stricken. The government responded that "we don't make a promise that we will be silent at sentencing" but only not to move for an upward departure or to ask for a particular sentence within a range. The government noted that "based on the information that I had at [the] time [of the plea agreement] I believed that the defendant was going to be in a [CHC] category three. He is in a category two. I think, technically, I could make an upward departure which I am not."

The court said that it understood appellant's concern about the arguments made by the government, but that

I sat through the trial [of appellant's co-defendants]. The government's remarks do not change any view that the Court had of this case coming out here.

So whether the government is correct or not, whether their interpretation of

your agreement is correct, I don't think there is any prejudice as a result of it.

I think that I have given Mr. Vaval the serious benefit here by not litigating an issue about the extra [role adjustment] point.

The court noted that it had always believed that this was an "extremely serious matter" and a "sentence at the top of the guidelines range" is required for punishment and deterrence.[2] The court sentenced appellant to the top of his Guidelines range—168 months—and ordered $6500 in restitution, but no fine.

## DISCUSSION

We turn now to appellant's arguments regarding the withdrawal of his plea because of a Rule 11 violation or resentencing because of a plea agreement breach by the government.

### a) *The Rule 11 Violation*

Rule 11(b)(1)(K) required the district court to "inform the defendant of, and determine that the defendant understands ... the court's authority to order restitution." It is undisputed that the court's failure to do so violated Rule 11. Nevertheless, we conclude that appellant may not withdraw his plea.

■■■ Appellant did not object to the Rule 11 violation, and we therefore review it for plain error under Fed.R.Crim.P. 52(b). Appellant bears the burden of establishing such an error. *United States v. Vonn,* 535 U.S. 55, 59, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002) (In the Rule 11 context, "a silent defendant has the burden to satisfy the plain-error rule."). Plain error is: (i) error, that is (ii) plain, and (iii) affects substantial rights. *United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Where these conditions are met, "an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States,* 520 U.S. 461, 467, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (internal quotation marks and citations omitted). In the context of a Rule 11 violation, to show plain error, a defendant must establish that the violation affected substantial rights and that there is "a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez,* 542 U.S. 74, 124 S.Ct. 2333, 2340, 159 L.Ed.2d 157 (2004).[3]

---

**2.** As to the seriousness of the case, the court stated further that:

> There was violence here. It is one of the most serious cases that I have seen where a gun is pulled on someone. The whole circumstances that I heard at the trial, and that were accurately reported in the presentence report are extremely disturbing. Mr. Vaval has a very serious criminal history .... I had people with [CHC] two with far less serious charges than these. You can get in [CHC] two with certain traffic offenses. These are very serious criminal charges.

**3.** Although we have held that the failure to inform a defendant at a plea hearing of the possibility of restitution where such restitution is ultimately imposed is not harmless error, *e.g., United States v. Harrington,* 354 F.3d 178, 186 (2d Cir.2004), the question before us is not whether the error is harmless but rather whether it is plain. The harmless error standard of Rule 11(h) applies only where a defendant has preserved an objection, forcing the government to bear the burden of showing no effect on substantial rights. *See Vonn,* 535 U.S. at 59, 122 S.Ct. 1043. When the Government bears the burden of excusing preserved error as harmless, "it is not enough to negate an effect on the outcome of the case." *Dominguez Benitez,* 124 S.Ct. at 2339 n. 7. Rather, the government must prove that the error was harmless beyond a reasonable doubt, *id.;* otherwise, there is an effect on substantial rights. However,

**152**

■ Appellant has not met this burden. Significantly, the PSR informed appellant before sentencing that restitution of $6500 was mandatory. At sentencing, appellant stated that he had read the PSR and was aware of its contents. Nevertheless, appellant never objected to the ordering of restitution or attempted to withdraw his plea prior to imposition of sentence. He also failed to object when the restitution order was actually imposed.

■ Where a defendant, before sentencing, learns of information erroneously omitted in violation of Rule 11 but fails to attempt to withdraw his plea based on that violation, there can be no "reasonable probability that, but for the [Rule 11 violation], he would not have entered the plea," and the plain error standard is not met. *Id.; see United States v. Sanchez–Cruz,* 392 F.3d 1196, 1200 (10th Cir.2004) (Rule 11 violation not plain error because, *inter alia,* appellant "made no attempt to withdraw his plea once he learned" the information left out of the Rule 11 colloquy).

In the instant matter, this conclusion is bolstered by the fact that at the Rule 11 proceeding, the court informed appellant that by pleading guilty, he would subject himself to a maximum fine of $250,000. *Cf. United States v. Molzen,* 382 F.3d 805, 807 (8th Cir.2004) (no plain error where appellant was not advised in plea colloquy that he might have to pay $10,000 in restitution, but was advised that he might be fined up to $2,000,000); *United States v. Powell,* 354 F.3d 362, 368–70 (5th Cir.2003) (failure to inform defendant of mandatory restitution during plea colloquy harmless where defendant aware of maximum potential fine, which exceeded restitution

amount, as she received adequate notice of her financial liability); *United States v. Morris,* 286 F.3d 1291, 1294 (11th Cir. 2002) (collecting cases holding that although Rule 11(c) "requires the district court to explain a defendant's liability for both fines and restitution, ... failure to do so does not impact a defendant's substantial rights where he was warned of a potential fine larger than the actual amount of restitution ordered").

We therefore conclude without difficulty that there is no reasonable probability that being told at the plea hearing of mandatory restitution of $6500 would have affected appellant's decision to plead guilty.

b) *The Breach of the Plea Agreement*

Appellant argues that the government breached the plea agreement by its argumentative relating of the facts of appellant's crime and the seriousness of his criminal history. We agree.

■ "We review interpretations of plea agreements de novo and in accordance with principles of contract law." *United States v. Riera,* 298 F.3d 128, 133 (2d Cir.2002). Further, we construe plea agreements strictly against the government and do not "hesitate to scrutinize the government's conduct to ensure that it comports with the highest standard of fairness." *United States v. Lawlor,* 168 F.3d 633, 637 (2d Cir.1999). "To determine whether a plea agreement has been breached, a court must look to what the parties reasonably understood to be the terms of the agreement." *Id.* at 636 (internal quotation marks and citation omitted). Moreover, because plea bargains re-

where an error is unpreserved, plain error review as defined in *Dominguez Benitez* is used, and a defendant's demonstration that the error affected the outcome will satisfy the "affecting substantial rights" prong of the

plain error test. *Dominguez Benitez,* 124 S.Ct. at 2339–40. In this case, where appellant did not object to the Rule 11 violation, we review for plain error.

quire defendants to waive fundamental constitutional rights, prosecutors are held to meticulous standards of performance. *Id.*

■ To be sure, the government acknowledged at sentencing that the plea agreement prohibited it from seeking an upward departure or taking a position on the appropriate sentence within the applicable Guidelines range. It also stated that it did not intend to violate those provisions of the agreement. Such statements do not, however, insulate the government against a finding of breach if in fact what was said constituted an argument about where within the range to sentence appellant and/or whether to upwardly depart. *See id.* at 637.

■ The government was permitted by the plea agreement to "advise" the court of "information relevant to sentencing, including criminal activity engaged in by the defendant," but some of its statements did not fall within this category of permissible behavior.[4] For example, the government volunteered highly negative characterizations of appellant's criminal history as "appalling" and his purported contrition as "disingenuous." Such characterizations are not "information" protected by the agreement. The government also noted that "the guidelines preclude us from looking at or calculating certain offenses." It then went on to do just that by stating, "[b]ut certainly this is not this defendant's first or second offense."

The facts of appellant's present crimes had already been fully canvassed during sentencing, in the PSR, and at the trial of appellant's co-defendants before the same judge. Nevertheless, just before sentencing, the government felt the need to provide the vivid detail quoted earlier. The government also suggested that "I think, technically, I could make an upward departure [argument]" and reiterated that it had thought appellant's CHC was III rather than II at the time of the agreement. It is difficult to draw a principled distinction between the government actually moving for an upward departure and stating that it "technically" could move for such a departure and then adding arguments that would support such a departure.

Moreover, the offending statements by the government occurred after the court had determined appellant's Guidelines range. At that point, the only remaining issues were whether to depart or where within the range to sentence appellant, and the government's statements had no relevance other than to address those issues. Indeed, at the conclusion of the statements in question, the government stated, "I just ask the Court to consider all of that when making the Court's decision about where to sentence this defendant."

Our holding that the government breached its plea agreement obligations is fully consistent with our decision in *Riera*, 298 F.3d at 128. In *Riera*, the government responded by letter to the district court's *sua sponte* inquiry about whether an upward departure was legal, stating that a departure was "well within [the court's] discretion." *Id.* at 131 (alteration in original). The plea agreement prohibit-

---

4. Appellant argues that the government breached the agreement by noting that the plea agreement and PSR mistakenly recommended a two-point rather than a three-point role adjustment. These statements were not a breach by the government because they constituted "information relevant to sentencing," and the government did not argue that this information should affect the court's sentencing decision. *See United States v. Peglera*, 33 F.3d 412, 413 (4th Cir.1994) ("[T]he government's duty in carrying out its obligations under a plea agreement is no greater than that of fidelity to the agreement.") (internal quotation marks and citation omitted).

ed the government from advocating an upward departure but allowed it to respond to inquiries from the court by stating relevant facts and law and opining whether the court had discretion to depart. *Id.* at 135. We held that the government's letter "came very close to breaching the agreement" because it "contained a few ill-advised descriptive words that might have suggested that the government thought that the court *should* upwardly depart." *Id.* at 135–36 (emphasis in original). However, there was no breach because the "letter did not explicitly advocate a departure" and, to repudiate "any possible implicit message of advocacy in the letter, the government soon thereafter and repeatedly told the district court that it had not intended to advocate and was not advocating a departure." *Id.* at 136.

The distinction between this case and *Riera* is in the severity and context of the government's breach. The government's conduct in this case went far beyond a few ill-advised words.

This case also differs from *Riera* because the government's letter there served a useful purpose—as specifically permitted by the plea agreement, the provision of requested legal and factual information to the court—which is an essential function of the government at sentencing. In such circumstances, rather than deter the provision of necessary information, we may forgive "a few ill-advised descriptive words." *Id.* at 135. Here, all relevant legal and factual information had already been provided to the court, and the government's statements served no purpose other than to advocate that the court upwardly depart or impose a high sentence within the Guidelines range.

c) *The Remedy for Breach of the Plea Agreement*

■■■ In general, "[t]he remedy for a breached plea agreement is either to per-

mit the plea to be withdrawn or to order specific performance of the agreement." *United States v. Brody*, 808 F.2d 944, 947 (2d Cir.1986); *see also Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) ("[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."). However, there is some lack of clarity regarding what types of breaches need not be remedied, and over when, where a remedy is required, withdrawal of the plea versus resentencing is appropriate.

1. Types of Breaches That Require Remedies

■■■ We have said that not every breach requires a remedy. Rather, the need for a remedy depends on the "nature of the broken promise and the facts of each particular case." *Brody*, 808 F.2d at 948 (remedy is required "where the violation of an agreement goes to the very 'essence' of the plea agreement").

(i) Lack of Prejudice Generally Irrelevant

■■■ Whether a breach by sentence advocacy caused prejudice in the form of an increased sentence is irrelevant to the need for a remedy. In *Santobello*, the government violated an agreement not to make a sentencing recommendation, and the Supreme Court accepted at face value the sentencing court's statement "the prosecutor's recommendation did not influence him." 404 U.S. at 262, 92 S.Ct. 495. The Court nevertheless concluded "that the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served

by remanding the case." *Id.* In other words, in order to preserve the integrity of plea bargaining procedures and public confidence in the criminal justice system, a defendant is generally entitled to the enforcement of a plea agreement without showing a tangible harm resulting from a breach. Moreover, to avoid even the appearance of such harm, when we do remand for breach of a government obligation not to engage in sentence advocacy, we direct the case to a different judge, even where the original judge, like Judge Amon here, *see United States v. Carbone,* 739 F.2d 45, 47–48 (2d Cir.1984), was not influenced by the government's arguments.

### (ii) Curative Performance Exception

 Under our caselaw, the principal type of plea agreement breach by the government that does not require a remedy is one that has been previously cured by specific performance. Thus, where the government breaches an affirmative obligation of a plea agreement provision at sentencing but then complies with that provision at a post-sentencing Rule 35 hearing, no further remedy for the initial breach is required on appeal. This is so because the defendant has already effectively received his remedy—performance.

For example, in *Brody,* the government agreed to inform the court at sentencing of the defendant's cooperation with authorities but failed to do so. We ordered no remedy for the breach, however, because the government complied with the breached provision at a Rule 35 motion for a reduced sentence. 808 F.2d at 948. "The terms of Brody's bargain, therefore, ulti-

mately were satisfied"; he "received specific performance of his plea agreement, albeit some time after the breach." *Id.* In *United States v. Williams,* where the government violated a similar agreement to inform the court of the defendant's cooperation, the court denied any remedy on appeal because the prosecutor fulfilled the terms of the agreement at a Rule 35 hearing. 656 F.2d 357, 359 (8th Cir.1981) (cited in *Brody,* 808 F.2d at 948). This exception is obviously inapplicable to the instant case.

### (iii) *De Minimis* Breach Exception

 There is also a very limited exception to the need for a remedy for a plea agreement breach by the government where the violation is so minor that it does not cause the defendant to suffer any meaningful detriment. *See Brody,* 808 F.2d at 948. In assessing whether a defendant suffered a meaningful detriment, the critical question is what the defendant reasonably understood to be the terms of the plea agreement, and whether his or her reasonable expectations have been fulfilled. *See Paradiso v. United States,* 689 F.2d 28, 31 (2d Cir.1982). For example, in *United States v. Casamento,* 887 F.2d 1141, 1181 (2d Cir.1989), we held that the government violated a plea agreement by submitting a sentencing memorandum without specifically reserving its right to do so. We deemed a remedy to be unnecessary, however, because the memorandum included only brief statements that "could properly have been presented to the district court as rebuttal to [defendant's] arguments." *Id.* at 1182.[5] Thus, the es-

---

**5.** Although we did not "perceive any possible prejudicial effect caused by the prosecutor's breach," but this was not because the memorandum did not affect the sentence; it may well have done so. *Casamento,* 887 F.2d at 1182 (internal quotation marks and citations omitted). Rather, there was no prejudice because the government reserved the right to respond to any arguments defendant might have made, and the statements made by the government could have been presented to the court as permissible rebuttal statements. *Id.*

sential purpose of the agreement was fulfilled. Similarly, in *Paradiso*, 689 F.2d at 30–31, we held that no remedy was required for a technical violation by the court of a binding plea agreement because the sentence imposed "did comport with the reasonable understanding and expectations of the defendant as to the sentence for which he had bargained." *Id.* at 31.[6]

#### (iv) The Present Case

■ In this case, the government's violation constituted a breach that requires a remedy. The promises not to move for an upward departure or to argue where to sentence appellant within his Guidelines range were, along with the dropping of five counts of the indictment, unquestionably the centerpiece of the agreement. Because the government violated essential provisions of the plea agreement, and because no specific performance of the agreement was (or could be) granted to appellant through a Rule 35 proceeding, we must order a remedy.

#### 2. Choice of Remedy—Resentencing or Withdrawal of Plea

■ Where a plea agreement is breached, the choice between the remedies of resentencing or plea withdrawal "is generally a discretionary one guided by the circumstances of each case." *United States v. Palladino*, 347 F.3d 29, 34 (2d Cir.2003) (internal quotation marks and citation omitted). Certainly, where resentencing before another district judge

would not cure the "taint[ ]" caused by a government breach—because, for example, the government violated the agreement by introducing new evidence that could not be "magically erased or ignored on remand"—we have held that plea withdrawal was the appropriate remedy. *Id.* at 35. In other cases, where remand to a different judge for resentencing would cure the breach caused by the government, we have ordered that remedy. *E.g., United States v. Corsentino*, 685 F.2d 48, 52 (2d Cir.1982) (government violated agreement to take no position at sentencing). Applying these principles, appellant has no valid claim to relief that does more than remedy the designated breach. Because remand for resentencing before a different judge will fully cure the government's breach, we order this remedy.

### CONCLUSION

Because there is no reasonable probability that appellant would not have pleaded guilty had he known that he was subject to mandatory restitution, the Rule 11 violation in this case does not constitute plain error. However, the government violated its plea agreement, and this breach requires the remedy of resentencing before a different district judge.

---

Thus, so the essential elements of the agreement were fulfilled.

**6.** In *Paradiso*, the agreement required that the defendant's sentences on the counts of two separate indictments be imposed concurrently rather than consecutively, but the purpose of that requirement, as evidenced by the intent of the parties, was to ensure that the sentence would be no longer than ten years—the maximum on one of the counts. *Id.* at 30–31. The

district court imposed consecutive sentences of 8 years' imprisonment on one count of the first indictment and 2 years' probation on the single count of the second indictment in technical violation of the binding plea agreement's guarantee that the sentences would be imposed concurrently. *Id.* We upheld the sentence because it satisfied the purpose of the agreement—to keep the defendant's sentence under 10 years. *Id.*