**Michael ROSEBORO, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**Nos. 11 Civ. 9375(VM), 08 Cr. 0660(VM).**

United States District Court, S.D. New York.

July 25, 2012.

Michael A. Roseboro, Three Rivers, TX, pro se.

### DECISION AND ORDER

VICTOR MARRERO, District Judge.

Petitioner Michael Roseboro ("Roseboro") brought this pro se motion pursuant to 28 U.S.C. § 2255 (" § 2255") to vacate, set aside, or otherwise correct his sentence. Roseboro claims he was denied his Sixth Amendment right to the effective assistance of counsel, and requests that his guilty plea be withdrawn and/or that his case be remanded for evidentiary hearings.

For the reasons discussed below, the Court DENIES Roseboro's petition in its entirety.

### I. BACKGROUND[1]

Between October 2005 and August 12, 2008, Roseboro orchestrated a credit card fraud scheme in which he made unauthorized purchases on the credit cards of at least 176 cardholders, most of them dentists, throughout the United States. Misrepresenting himself as an employee of a credit card company, Roseboro contacted cardholders about supposedly fraudulent charges on their credit cards to obtain their card numbers and identifying information such as dates of birth and Social Security numbers. Roseboro used this information to buy luxury items on his victims' credit card accounts; by these means, he succeeded in stealing $1,749,065 in merchandise and attempted to steal an additional $633,674.

On September 5, 2008, the Government indicted Roseboro, alleging one count of actual and attempted use of an access device during a one-year period to receive at least $1,000 ("Count 2"), see 18 U.S.C. §§ 1029(a)(5), 1029(b)(1), one count of conspiracy to do the same ("Count 1"), see id. § 1029(b)(2), and one count of aggravated identity theft ("Count 4"), see id. § 1028A (" § 1028A"). On June 29, 2009, Roseboro entered a guilty plea on Counts 1, 2, and 4. During the plea colloquy, Magistrate

1. The Court derives the factual and procedural summary below from (1) Pet. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, dated Dec. 8, 2011 (No. 11 Civ. 9375, Docket No. 1); (2) Movant's Mem. of Law in Support of His 28 U.S.C. § 2255 Mot. ("Mem.") (No. 11 Civ. 9375, Docket No. 2); (3) Government's Mem. of Law in Opp. to Def. Michael Roseboro's Mot. to Vacate, Set Aside, or Correct His Sentence, dated Mar. 20, 2012 ("Opp.") (No. 08 Cr. 660, Docket No. 45); (4) Government's Sentencing Mem., dated Nov. 20, 2009 (No. 08 Cr. 660, Docket No. 45, Attachment 1); (5) Tr. of Guilty Plea Colloquy, dated June 29, 2009 ("Opp. Ex. B.") (No. 08 Cr. 660, Docket No. 45, Attachment 2); (6) Tr. of Sentencing Conference, dated Nov. 25, 2009 (No. 08 Cr. 660, Docket No. 45, Attachment 4); and (7) Movant's Traverse to the Response Filed by the Government Concerning Movant's 28 U.S.C. § 2255 Mot., dated May 15, 2012 ("Reply"). Except where specifically referenced, no further citation to these sources will be made.

Judge Kevin N. Fox informed Roseboro of the consequences that the plea could have on his sentence, including: a statutory maximum of 7.5 years' imprisonment on Count 1, a statutory maximum of 15 years' imprisonment on Count 2, and a two-year mandatory imprisonment term on Count 4 to run consecutively to any other imprisonment term; up to $250,000 in fines; and the imposition of special assessments and conditions of supervised release. During the colloquy with Magistrate Judge Fox, Roseboro stated that he was satisfied with the representation of his attorney Howard Lester Jacobs ("Jacobs") and that he had had sufficient opportunity to discuss the case with Jacobs. Magistrate Judge Fox did not inform Roseboro of the possible imposition of restitution.

In its Presentence Investigation Report ("PSR"), the United States Probation Office ("Probation Office") calculated that under the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G."), Roseboro's base offense level was 23 and his Criminal History Category was VI, based on a Criminal History Score of 14. This combination yielded an advisory Guidelines range of 92 to 115 months' imprisonment[2] on Counts 1 and 2, to be followed by a term of 24 months' imprisonment on Count 4, which was imposed consecutively under § 1028A. Roseboro's Criminal History Score of 14 was calculated based on seven prior convictions: two points for a second-degree menacing conviction in 1992; two points for a third-degree menacing convictions in 1996; two

points for a fourth-degree criminal mischief conviction in 1999; two points each for two 1996 convictions for illegal use of a telecommunication access device; and two points each for two second-degree aggravated harassment convictions in 2000. The Probation Office recommended that Roseboro be sentenced to 92 months' imprisonment to run concurrently on Counts 1 and 2, and 24 months to run consecutively on Count 4.

The PSR also included a discussion of restitution. The report listed the restitution amounts owed to Roseboro's victims, Bank of America, American Express, and their respective credit card merchants, and contained the names and accompanying losses for each individual American Express merchant victim; however, the report did not contain individualized restitution information for each of the Bank of America merchants victimized by the scheme.

On November 29, 2009, the Court sentenced Roseboro to 92 months on Counts 1 and 2 to run concurrently and 24 months on Count 4 to run consecutively, for a total of 116 months' incarceration. The Court denied Roseboro's application for a downward departure from his Guidelines range. Additionally, Roseboro was mandated to pay a $300 special assessment and $1,749,065 in restitution to his victims. At sentencing, the Court did not provide Roseboro with the restitution information missing from the PSR—the names and

---

**2.** The statutory maximum for Count 1, as explained *infra* Part II(B)(3), is 90 months, which is less than the Guidelines range the Probation Office recommended in the PSR for both Counts 1 and 2. However, because the sentence for Count 1 runs concurrently with that for Count 2, and because the Court determines that the sentence for Count 2 is both below the statutory maximum, *see id.,* and within the Guidelines Range, *see infra* Part

II(B)(4), the sentencing error is ultimately harmless, and the proper Guidelines range for Count 2 subsumes the range for Count 1. The Guidelines range remains relevant here for the purposes only of ascertaining the propriety of the sentence on Count 2. Thus, the Court will hereinafter refer to the Guidelines range and the factors composing it as the Guidelines range for Count 2, not Counts 1 and 2.

losses of the individual Bank of America merchants.

On December 8, 2010, represented by attorney Jonathan Svetkey, Roseboro appealed his sentence to the United States Court of Appeals for the Second Circuit ("the Second Circuit"), which affirmed this Court's ruling. *See United States v. Roseboro,* 402 Fed.Appx. 657, 658 (2d Cir.2010). On appeal, Roseboro advanced three theories of error. First, he asserted, and the Government conceded, that this Court miscalculated his Criminal History Category by treating his 50–day sentence for a menacing conviction from 1992 as a "prior sentence" as defined by U.S.S.G. §§ 4A1.2(e)(2) and 4A1.2(k)(2)(C); this resulted in an elevated Guidelines range on all counts of 116–139 months, rather than 108–129 months. Second, Roseboro requested a reversal of this Court's denial of a downward departure from his Guidelines range as determined in the PSR. *Id.* Third, Roseboro claimed that his age, upbringing, drug use, and conditions of pretrial confinement justified a reduced sentence. *Id.* (internal citation omitted).

On December 8, 2011, just over two years after he was sentenced and exactly one year after he appealed, Roseboro timely filed the instant motion in this Court under § 2255. Roseboro asserts that he was denied his Sixth Amendment right to effective assistance of counsel insofar as his lawyers during both the trial and the appeal were deficient in failing to: (1) object or argue that Magistrate Judge Fox neglected to warn Roseboro when he pled guilty of the potential imposition of restitution, as mandated by Fed.R.Crim.P. 11(b)(1)(K); (2) object or argue that the Probation Office defied the mandate set forth in 18 U.S.C. § 3664(a) that the Probation Office promptly provide the names and losses of the Bank of America credit card merchant victims; (3) object or argue

that his 92–month sentence for Count 1 exceeded the statutory maximum; and (4) object or argue that this Court miscalculated his Criminal History Category as it related to the Guidelines range on Count 2. Fifth and finally, Roseboro argues that he would have maintained a plea of not guilty and proceeded to trial if he were properly notified of the statutory maximum for Count 1 and of the potential restitution order, and that counsel deprived him of the benefits of this argument on appeal by failing to raise it before the Second Circuit.

## II. *DISCUSSION*

The Court denies Roseboro's § 2255 motion and his motion for an evidentiary hearing because Roseboro's ineffective assistance of counsel claim is based on five substantive arguments, which are procedurally defaulted. Because he has suffered no discernible prejudice from his attorneys' performance, Roseboro cannot succeed on his claim of ineffective assistance.

## A. *LEGAL STANDARD FOR PRO SE LITIGANTS*

At the outset, the Court notes that Roseboro is a pro se litigant. As such, his submission must be held "to less stringent standards than formal pleadings drafted by lawyers." *Ferran v. Town of Nassau,* 11 F.3d 21, 22 (2d Cir.1993) (internal citation omitted). The Court must construe Roseboro's submissions "liberally and interpret them to raise the strongest arguments that they suggest." *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (citation omitted). A pro se litigant, however, is not exempt "from compliance with relevant rules of procedural and substantive law." *Boddie v. N.Y. State Div. of Parole,* 285 F.Supp.2d 421, 426 (S.D.N.Y. 2003) (citation omitted).

A person in federal custody may move to vacate, set aside, or correct his sentence if it was imposed in violation of "the Constitution or laws of the United States, or the court was without jurisdiction to impose such a sentence, or ... the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack...." 28 U.S.C. § 2255(a). As a form of collateral review, a § 2255 motion may not be used as a substitute for a direct appeal. *United States v. Frady,* 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Accordingly, where a petitioner does not bring a claim on direct appeal, the doctrine of procedural default bars him from raising that claim in a subsequent § 2255 proceeding "unless he can establish both cause for the procedural default and actual prejudice resulting therefrom." *Rosa v. United States,* 170 F.Supp.2d 388, 396 (S.D.N.Y.2001) (internal citation omitted).

In the instant case, because Roseboro presents his five substantive claims for the first time in his § 2255 motion, he has procedurally defaulted them. However, procedural default does not apply to claims of ineffective assistance of counsel. *See Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). If, in a § 2255 motion, a petitioner raises issues not brought up on direct appeal but makes a bona fide claim that counsel was ineffective, he can still obtain § 2255 relief "on the theory that ineffective assistance of counsel itself provides the 'cause' for the failure to appeal the issue." *Rosa,* 170 F.Supp.2d at 396.

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. *See Strickland v. Washington,* 466 U.S. 668, 669, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In *Strickland,* the Supreme Court established a two-part test to determine whether defense counsel's assistance was ineffective.

*See id.* First, the petitioner must show that "counsel's representation fell below an objective standard of reasonableness" according to "prevailing norms." *Id.* at 688–89, 104 S.Ct. 2052. Second, the petitioner must show that he suffered prejudice as a result of his counsel's deficient performance. *See id.* at 693, 104 S.Ct. 2052. Prejudice is established where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

An attorney's performance is given a strong presumption of effectiveness, as courts recognize a "wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. 2052. Constitutionally substandard errors are those that cannot be explained as "resulting from a sound trial strategy, but instead arose from oversight, carelessness, ineptitude, or laziness...." *Eze v. Senkowski,* 321 F.3d 110, 112 (2d Cir.2003). The failure to raise particular claims may, in some circumstances, rise to the level of unreasonableness contemplated in *Strickland. See Claudio v. Scully,* 982 F.2d 798, 803 n. 5 (2d Cir.1992) (internal citation omitted). Yet a court applying *Strickland* need not answer the subjective question of whether an attorney's conduct is sufficiently substandard as to defeat the presumption of effectiveness, and can instead dispose of the inquiry for lack of prejudice without addressing the *Strickland* test's first prong. *See Strickland,* 466 U.S. at 697, 104 S.Ct. 2052.

### B. *INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS*

1. *Failure to Object During the Plea Colloquy*

Roseboro correctly points out that, in violation of Fed.R.Crim.P. 11(b)(1)(K)

("Rule 11(b)(1)(K)"), the Magistrate Judge failed to warn him during his plea colloquy that pleading guilty could subject him to restitution. Had trial counsel objected to this omission by the Magistrate Judge, Roseboro argues, he would have withdrawn the plea and proceeded to trial. Alternatively, Roseboro contends that had appellate counsel raised the Magistrate Judge's omission on appeal, the case would have been remanded for trial. Roseboro's arguments fail because they cannot satisfy the prejudice prong of *Strickland.*

Rule 11(b)(1)(K) of the Federal Rules of Criminal Procedure provides that a district court, before accepting a guilty plea, must "inform the defendant of, and determine that the defendant understands ... the court's authority to order restitution." A defendant who has pled guilty and seeks to reverse his conviction. on Rule 11 grounds on direct review "must show a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez,* 542 U.S. 74, 76, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004). The reviewing court is "not to second-guess a defendant's actual decision; if it is reasonably probable he would have gone to trial absent the error, it is no matter that the choice may have been foolish." *Id.* at 85, 124 S.Ct. 2333.

Neither the Supreme Court of the United States nor the Second Circuit has ruled on *Strickland* prejudice for Rule 11 violations on collateral review. However, as the Supreme Court recognized in *Dominguez Benitez,* the standard for evaluating a Rule 11 violation on direct review resembles and is closely related to the *Strickland* prejudice standard. *See id.* at 81, 83 n. 9, 124 S.Ct. 2333 (closely comparing harmless error standard used to directly review Rule 11 violations with *Strickland* prejudice standard). Therefore, the Court considers this Circuit's holdings applying the *Dominguez Benitez* standard on direct review highly instructive in assessing Roseboro's Rule 11 claim on collateral review. *See United States v. Johnson,* 425 Fed.Appx. 66, 67–68 (2d Cir.2011); *United States v. Porbeni,* 399 Fed.Appx. 615, 616–17 (2d Cir.2010); *United States v. Vaval,* 404 F.3d 144, 152 (2d Cir.2005) (citation omitted).

The Second Circuit has held that, as a matter of law, a defendant who learned of the possibility of restitution at any time before sentencing and did not ask to withdraw his guilty plea is barred from meeting the *Dominguez Benitez* standard of reasonable probability. *See Porbeni,* 399 Fed.Appx. at 616–17; *Vaval,* 404 F.3d at 152. In *Porbeni,* the defendant was not informed prior to pleading guilty that doing so could subject her to restitution, but she discovered that possibility before sentencing. *See* 399 Fed.Appx. at 617. Since the defendant chose to retain her plea even after learning about the restitution obligation, the Second Circuit concluded that there could be no "reasonable probability that Porbeni would not have pleaded guilty if the district court. had informed her about the restitution penalty prior to accepting her plea." *Id.*

Roseboro cites *United States v. Delpiano* for the proposition that a court's failure to inform a defendant during a plea colloquy of the consequences of the plea bargain, as they are enumerated by Rule 11, can invalidate the court's restitution order. *See* 225 F.3d 646, 646 (2d Cir.2000) (*citing United States v. Young,* 932 F.2d 1035, 1037 (2d Cir.1991)). The Court is not persuaded that *Delpiano* is controlling. *Porbeni* is more directly relevant than *Delpiano* because it addresses the reasonable probability standard at issue here, whereas in *Delpiano* the Second Circuit remanded for resentencing without discussing preju-

dice. *See* 399 Fed.Appx. at 616–17, 225 F.3d at 646.

The Court sees no material factual distinction between Roseboro's case and Porbeni's. Roseboro pled guilty to Counts 1, 2, and 4 on June 29, 2009. On September 21, 2009, he received the PSR, which included the total restitution amounts owed to Bank of America, American Express, and the individual credit card merchants. On November 29, 2009, more than two months later, he was sentenced. Roseboro therefore knew the Rule 11 information before sentencing, and he not only failed to object but also failed to seize the opportunity within the two-month window to withdraw his guilty plea. Given the rule in *Porbeni,* Roseboro cannot plausibly argue that had he known the Rule 11 information at the plea colloquy, he would not have pled guilty. *See* 399 Fed.Appx. at 616–17. Thus, Roseboro cannot succeed on his Rule 11 argument because he cannot show prejudice.

### 2. *Failure to Object to § 3664 Violations*

Roseboro contends that his trial and appellate counsel were ineffective because they did not object to the Probation Office's failure to timely supply the names and losses of identifiable Bank of America credit card merchants affected by Roseboro's scheme to steal goods, as required by 18 U.S.C. § 3664(d)(5) ("§ 3664(d)(5)"). Roseboro does not articulate what harm allegedly stemmed from the failure to object, but if his arguments are liberally construed, the alleged harm must be that he would have proceeded to trial had he been fully informed of the restitution amounts.

For certain federal offenses mandating restitution, the Probation Office must produce "a complete accounting of the losses to each victim" and "any restitution owed pursuant to a plea agreement." 18 U.S.C. § 3664(a) (" § 3664(a)"). If the loss amounts cannot be determined at least ten days before sentencing, the court must set a date for the final determination of the victim's losses, not to exceed ninety days after sentencing. *See United States v. Catoggio,* 326 F.3d 323, 328 (2d Cir.2003).

■ In deciding, on direct review, whether to remand as a result of alleged § 3664(d)(5) violations, the Second Circuit applies the harmless error standard. *See, e.g., Catoggio,* 326 F.3d at 328, 330; *United States v. Stevens,* 211 F.3d 1, 5–6 (2d Cir.2000). The Court considers this Second Circuit case law persuasive in this context given the similarities between the harmless error standard and *Strickland's* prejudice standard. *See Strickland,* 466 U.S. at 693–94, 104 S.Ct. 2052 (internal citation omitted).

To prevail on review, a defendant who was not informed of the § 3664(a) amounts within the time frame mandated by § 3664(d)(5) must show concrete prejudice from the delay that "adversely affected [his] substantial rights." *See Stevens,* 211 F.3d at 6. The Second Circuit has defined the prejudice standard applied to § 3664(d)(5) violations by requiring a defendant to show that the Probation Office's non-compliance, and by extension here, the defense lawyer's failure to object, actually weakened the defendant's case. *See id.* at 5–6. This prejudice must be concrete and identifiable: for instance, after the 90–day period expired, documents or witnesses were no longer available or the defendant's financial circumstances worsened, which affected the imposition of restitution. *See id.*

■ Taking Roseboro's allegations as

true,[3] the Court finds that Roseboro has not suffered any cognizable prejudice. First, Roseboro does not demonstrate that the § 3664(a) violation caused his defense to falter in any of the ways described in *Stevens*. *See id.* Second, the Court finds no reasonable probability that Roseboro would have withdrawn his plea if timely notified of the exact restitution amounts owed to each particular victim; while the total amount of restitution penalty may certainly be an important consideration to a defendant weighing the potential risks and benefits of forgoing trial, the specific allocations owed to victims are not.

Thus, Roseboro cannot obtain relief on the basis of the § 3664(d)(5) violation because he cannot demonstrate that the violation prejudiced him in any discernible or reasonable way.

### 3. Failure to Object to a Sentence in Excess of the Statutory Maximum

Roseboro asserts that the Court's sentence of 92 months—seven years and eight months—surpassed the mandatory statutory maximum of 7.5 years for Count 1, and that had counsel objected at sentencing or on appeal, his sentence would have been shorter. Ultimately, Roseboro's analysis is unconvincing.

Roseboro is correct that the Court erred in handing down "a 92–month sentence of imprisonment on Counts 1 and 2 to run concurrently," and that his counsel raised no objection at sentencing. (*See* Sentencing Tr. at 10–11.) The maximum sentence for Count 1, conspiracy, is 7.5 years, or 90 months. *See* 18 U.S.C. § 1029(b)(2).

Count 2, however, carries a maximum term of imprisonment greater than 92 months, so the erroneous sentence as to Count 1 is harmless and should not be set aside or remanded for resentencing. For an erroneous sentence to be set aside or remanded, the error must affect substantial rights. *United States v. Outen*, 286 F.3d 622, 640 (2d Cir.2002). A defendant's substantial rights are not adversely impacted if the total sentence imposed with the error would remain the same absent the error. *See United States v. Rivera*, 282 F.3d 74, 77–78 (2d Cir.2000) (holding that defendant's technically erroneous sentence for one of multiple counts was harmless error and did not merit remand because erroneous sentence ran concurrently with a statutorily proper sentence). Although *Rivera* governs direct review of sentencing errors, its rule is instructive in this collateral review proceeding because the rule relies on the same conception of prejudice as employed in *Strickland*. *See Strickland*, 466 U.S. at 693, 104 S.Ct. 2052.

Like the defendant in *Rivera*, Roseboro would still be serving his current sentence of 92 months even if counsel at sentencing or on appeal had asked the Court to amend its sentence to comply with the statute. *See* 282 F.3d at 77–78. Roseboro's erroneous 92–month sentence for Count 1 runs concurrently with a statutorily proper 92–month sentence for Count 2. The statutory maximum for Count 2, actual or attempted access device fraud, is 15 years, which well exceeds 92 months. *See* 18 U.S.C. § 1029(c)(1)(A)(ii). The Court was also guided in its imposition of a 92–month sentence by an advisory Guide-

---

**3.** The Government insists that the PSR sent to defense counsel on September 21, 2009 included a spreadsheet with the names and losses of all Bank of America merchants. (Opp. at 16.) The Government also attaches to its Opposition the cover letter it sent to

defense counsel when the Government forwarded the spreadsheet provided in the PSR, but the letter is dated September 21, 2008, not 2009. (*See* Opp. Ex. C, at 1.) Roseboro says that he did not receive this information until March 19, 2012. (Reply at 7.)

lines range applicable to Count 2, which resulted from proper calculations of Roseboro's Base Offense Level and Criminal History Category. *See infra* Part II(B)(4). Thus, insofar as Roseboro cannot establish prejudice for his counsel's failure to object to a statutorily erroneous sentence, he cannot obtain § 2255 relief on that ground.

### 4. *Failure to Object to a Miscalculation of Petitioner's Criminal History Category*

██ Roseboro also claims that his trial and appellate lawyers did not object to three miscalculations in the PSR which affected his Criminal History Score. These miscalculations supposedly increased his corresponding Criminal History Category and elevated his recommended Guidelines range applicable to Count 2 from a range of 57 to 71 months or 70 to 87 months to a range of 92 to 115 months. Since the PSR made none of the calculation errors Roseboro alleges, the Court finds that his lawyers were not ineffective in failing to object.

#### a. *Inclusion of Prior Sentences Lasting Sixty Days in Petitioner's Criminal History Score*

Roseboro argues that in its PSR, the Probation Office, in violation of U.S.S.G. § 1B1.9 (" § 1B1.9"), included three prior convictions carrying 60–day sentences in his record as part of his Criminal History Score calculation. To advance this contention, Roseboro reads § 1B1.9 as stating that prior sentences lasting six months or less do not factor into a defendant's Criminal History Score. The three prior convictions and corresponding sentences added six points to Roseboro's Criminal History Score and contributed to a total of 14 points, placing him in Criminal History Category VI. Roseboro claims that if the convictions were properly excluded from his Criminal History Score in accordance with § 1B1.9, he would be in Criminal History Category III and his resultant Guidelines range for Count 2 would be 57 to 71 months.

Section 1B1.9 states that "[t]he sentencing guidelines do not apply to any count of conviction that is a Class B or C misdemeanor or an infraction." United States Sentencing Guidelines § 1B1.9 (2011). Both misdemeanor classes refer to those offenses which carry statutory maximum prison terms of six months. *See id.* Pursuant to U.S.S.G. § 4A1.1(b) ("§ 4A1.1(b)"), two points are added to a defendant's Criminal History Score for each prior conviction in the defendant's record with a sentence lasting between sixty days and 13 months. *See id.* § 4A1.1(b).

Roseboro's argument cannot stand because it relies on a misinterpretation of § 1B1.9. Section 1B1.9 indicates that the Guidelines act as an advisory tool for sentencing only those federal offenses that are more serious than Class B and C misdemeanors; it says nothing about the calculation of a defendant's Criminal History Score. This distinction is clear given the placement of § 1B1.9 in the United States Sentencing Commission Guidelines Manual ("Manual"). Section 1B1.9 appears in the first chapter of the Manual, titled "Introduction, Authority, and General Application Principles." *See* Manual § 1B1.9 (2011). This chapter is separate from Chapter 4, "Criminal History and Criminal Livelihood," which provides instructions for calculating a defendant's Criminal History Score. *See id.* § 4A1.1. Pursuant to § 4A1.1, the PSR properly counted the three prior convictions and 60–day sentences as part of Roseboro's Criminal History Score. *Id.*

In sum, Roseboro's argument fails because it assumes that the PSR was errone-

ous, when, in fact, the PSR correctly accounted for his prior sentences.

### b. *Merger of Past Sentences*

■ If the Court construes Roseboro's arguments liberally, he contends that even if his past sentences lasting sixty days are included in his Criminal History Score, four points should be eliminated nonetheless pursuant to U.S.S.G. § 4A1.2(a)(2) (" § 4A1.2(a)(2)"). Essentially, Roseboro argues that two convictions from 1996 and two from 2000 were related, and that pursuant to the consolidation principles of § 4A1.2(a)(2), the sentences for each pair of convictions now worth four points should collapse into a single prior sentence worth two points. This construction would remove a total of four points from Roseboro's Criminal History Score, yielding a score of ten, a Criminal History Category of V, and a Guidelines range applicable to count 2 of 84 to 105 months. *See* U.S.S.G. § 5A Sentencing Table.

■ Section 4A1.2(a)(2) states that sentences for related offenses merge into a single sentence. Offenses separated by intervening arrests constitute discrete sentences, even if they were of a similar character. *United States v. Boonphakdee*, 40 F.3d 538, 544 (2d Cir.1994).

Roseboro's two convictions from 1996 were separated by intervening arrests, as were his two convictions from 2000. In its PSR, the Probation Office thus correctly assigned two points to each of the four convictions, and did not err. In conclusion, Roseboro cannot prevail on these grounds since the PSR did not contain the errors he alleges.

### c. *Inclusion of a Prior Sentence Imposed More Than Ten Years Before 2005*

■ Construing Roseboro's § 2255 petition liberally, the Court finds that he could present an additional miscalculation argument in the petition. On appeal, Roseboro argued that in the PSR the Probation Office erroneously assigned two criminal history points to his 1992 sentence and subsequent 1996 sentence for second-degree menacing. However, even if Roseboro had raised this argument again in his petition, the Court would dismiss the claim due to harmless error. *See Brecht v. Abrahamson*, 507 U.S. 619, 622, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993).

A defendant's Criminal History Score under the Guidelines consists only of sentences imposed within ten years of the commencement of the instant offense. U.S.S.G. § 4A1.2(e)(2). "Revocation of probation, parole, supervised release, special parole, or mandatory release may affect the time period under which certain sentences are counted as provided in § 4A1.2(d)(2) and (e)." *Id.* § 4A1.2(k)(2) ("§ 4A1.2(k)(2)"). Where a defendant is resentenced for breaching an original sentence of conditional discharge but receives a resentence of less than 13 months, the Guidelines instruct courts to apply § 4A1.2(e)(2) "us[ing] . . . the date of the original sentence." *Id.* Combining these rules, then, neither the original sentence nor the resentence on breach of conditional discharge is included in Roseboro's Criminal History Score unless he began perpetrating the instant offense within ten years of the original sentence. *See id.* §§ 4A1.2(e)(2), 4A1.2(k)(2).

Roseboro was arrested in 1992, was sentenced for the same offense later that same year to conditional discharge and no prison time, and then was resentenced to 50 days in prison when he breached his conditional discharge in 1996. He initiated the credit card fraud scheme at issue in the instant case in 2005. In non-compliance with § 4A1.2(k)(2), the PSR included the 1992 sentence and 1996 resentencing

as a "prior sentence" in the Criminal History Score, even though Roseboro was first sentenced to conditional discharge more than ten years before he began perpetrating his credit card fraud scheme. Had the PSR properly followed § 4A1.2(k)(2) and excluded both the original sentence and resentence from Roseboro's history score, Roseboro would be in the lower Criminal History Category of V ("Category V"), which carries a recommended range of 84 to 105 months. *See* Manual § 5A Sentencing Table (2011).

The Probation Office indeed erred, yet this error does not merit granting Roseboro habeas relief. Given that Roseboro did not procedurally default this claim, as long as he "had counsel and was tried by an impartial adjudicator, there is a strong presumption that any. [constitutional] errors that may have occurred are subject to harmless-error analysis." *Neder v. United States,* 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (alteration in original) (*quoting Rose v. Clark,* 478 U.S. 570, 579, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986)). A § 2255 petitioner is not entitled to habeas relief if the statutory or constitutional error did not have a "substantial and injurious effect or influence in determining the jury's verdict" or the judgment. *See Brecht,* 507 U.S. at 622, 113 S.Ct. 1710 (*quoting Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)).

The Probation Office's miscalculation error cannot be described under *Brecht* as exercising a "substantial and injurious effect or influence" on the judgment. 507 U.S. at 622, 113 S.Ct. 1710. The 92–month sentence Roseboro is currently serving lies squarely within the Guidelines range applicable to Count 2 that corresponds to a Criminal History Category of V. It remains what this Court views as a sufficient but not greater than necessary sentence for this defendant's offense and criminal history and the term the Court would have imposed even under an advisory Guidelines range of 84 to 105 months, making the error harmless under *Rivera. See* 282 F.3d at 78. In conclusion, because the error made no difference to the outcome of the case, Roseboro would not have benefitted from discussing it in his § .2255 motion.[4]

## C. *PETITIONER'S REQUEST FOR A HEARING*

Roseboro requests an evidentiary hearing under § 2255 to resolve factual issues related to sentencing. The Court denies that request. Section 2255 requires a "prompt hearing" on the movant's claims, except where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." 28 U.S.C. § 2255. Only one factual dispute arises in Roseboro's entire petition, which concerns the timing with which he was informed of the restitution amounts owed to the Bank of America merchants. The Court disposed of this issue as a matter of law. *See supra* Part II(B)(2). Roseboro also has information about the amounts he

---

4. In a fifth claim, Roseboro asserts that trial counsel's failure to notify Roseboro of the correct statutory maximum for Count 1 and the potential for restitution produced "mass uncertainty" about the risks of forgoing trial, and that appellate counsel should have raised this as error because Roseboro "had nothing to lose" by proceeding to trial. (Mem. at 18.) This argument fails for two reasons. First, it rests on a factual inaccuracy, as the Magistrate Judge gave the correct statutory maximum for Count 1 at the plea colloquy, even if the Court ultimately sentenced Roseboro in excess of this statutory maximum for Count 1. (*See* Opp. Ex. B, at 6–7). Second, the argument merely repeats Roseboro's contentions about the Magistrate Judge's failure to provide required Rule 11 information at the plea colloquy. (*See supra* Part II(B)(1)).

must apportion in restitution to each victim. (*See* Reply at 7). As he has not disputed those amounts, there is no need to remand for a hearing related to restitution. Lastly, and perhaps most importantly, Roseboro is not legally entitled to relief on any of his five contentions.

### III. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the motion (Docket No. 1) of petitioner Michael Roseboro to vacate, set aside, or otherwise correct his conviction and sentence pursuant to 28 U.S.C. § 2255 is **DENIED.**

The Clerk of Court is directed to terminate any pending motions and to close this case.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

As Roseboro has not made a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c)(1)(B).

**SO ORDERED.**